United Tavern Owners of Philadelphia *v.*
Philadelphia School District et al.,
Appellants.

Argued September 30, 1970. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused February 3, 1971.

*Patrick T. Ryan,* with him *Drinker, Biddle & Reath,* for appellants.

*Nathan L. Posner,* with him *Israel Packel, John J. McCreesh, Jr.,* and *Fox, Rothschild, O'Brien & Frankel,* and *McCreesh & McCreesh,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, January 7, 1971:

On June 4, 1970, the City of Philadelphia enacted an ordinance amending §19-1800 of The Philadelphia

Code by adding a new section authorizing the Board of Education of the School District of Philadelphia to impose a tax of ten percent on the retail sales of liquor and malt and brewed beverages in hotels, restaurants, taverns or clubs within the City of Philadelphia.

On June 8, 1970, pursuant to the enabling ordinance, the Board of Education of the School District of Philadelphia adopted a resolution imposing and levying the ten percent tax.

On June 18, 1970, the restaurant, hotel and tavern associations, two restaurants, one tavern, and an officer of the tavern association, who together are the appellees, brought an action in equity requesting that the appellants be enjoined from imposing, levying, assessing or collecting the tax. On July 9, 1970, Judge HIRSH filed his adjudication and decree nisi, permanently enjoining collection of the tax. The appellants filed exceptions, and on July 17, 1970, after hearing arguments, the court en banc directed that the decree be made final. The case now comes to us on appeal.

The case presents only one question: May the City of Philadelphia validly enact an ordinance taxing the retail sales of liquor, malt and brewed beverages?

The court below and the parties to this action have sought to discuss the doctrine of preemption as it applies to this case as two separate questions. First, has the state preempted the field through the enactment of the Liquor Code, Act of April 12, 1951, P. L. 90, Art. I, §101, as amended, 47 P.S. §1-101 et seq.? Second, has the state preempted the field through the enactment of the Commonwealth sales tax, Act of March 6, 1956, P. L. (1955) 1228, Art. I, §1, as amended, 72 P.S. 3403-201(a), which imposed a six percent sales tax on liquor, and the enactment of the emergency act of June 9, 1936, Ex. Sess., P. L. 13, §2, as amended, 47 P. S. §795, which imposed an eighteen percent tax on liquor sold by the liquor control board?

The chancellor concluded against the validity of the tax on both issues, finding that the Commonwealth had totally preempted the field of legislation pertaining to liquor by its enactment of the comprehensive state Liquor Code, 47 P.S. 1-101 et seq., and had also specifically preempted the area of taxation on the sales of liquor by the specific wording of the Sterling Act.

The court en banc agreed with the chancellor insofar as the preemptive effects of the Liquor Code were concerned, but the court en banc did not believe that the Sterling Act had preempted the field of taxation on the sales of liquor.

Although we agree with both the chancellor and the court en banc in their final conclusion that the City of Philadelphia is barred from authorizing the imposition of the tax, we disagree with their analysis of the issues involved. In our view, in light of the doctrine of preemption which has developed in Pennsylvania jurisprudence, the state Liquor Code alone is not a sufficient indication of the Commonwealth's intention to preempt the entire field of legislation affecting liquor. Only when consideration is given to the two taxes which exist on liquor and the specific preemption doctrine enacted as part of the Sterling Act, as well as to the Liquor Code, can the conclusion be reached that the City of Philadelphia is barred from authorizing the imposition of a tax on the retail sales of liquor in hotels, restaurants, taverns or clubs.

At this point, it would be well to restate the general principles involved in determining when local governments in Pennsylvania have the power to act and when they are barred from acting, despite otherwise having the power, because the Commonwealth has preempted the field.

In Pennsylvania, cities have no power to act unless that power has been granted to them by the state legis-

lative body by an enabling act. Moreover, even when cities have been given powers to act, if the state has preempted the field in a specific area, then in that area cities have no power despite the wording of the enabling act on which they rely.

Our most recent statement on this general subject of preemption appears in *Harris-Walsh, Inc. v. Dickson City Boro.*, 420 Pa. 259, 268-9, 216 A. 2d 329, 333-4 (1966). There, we quoted at length from our opinion in the landmark case of *West. Pa. Restaurant Assn. v. Pittsburgh*, 366 Pa. 374, 380-1, 77 A. 2d 616 (1951):
" '(1) There are statutes which expressly provide that nothing contained therein should be construed as prohibiting municipalities from adopting appropriate ordinances, not inconsistent with the provisions of the act or the rules and regulations adopted thereunder, as might be deemed necessary to promote the purpose of the legislation. On the other hand there are statutes which expressly provide that municipal legislation in regard to the subject covered by the State act is forbidden. Then there is a third class of statutes which, regulating some industry or occupation, are silent as to whether municipalities are or are not permitted to enact supplementary legislation or to impinge in any manner upon the field entered upon by the State; in such cases the question whether municipal action is permissible must be determined by an analysis of the provisions of the act itself in order to ascertain the probable intention of the legislature in that regard. It is, of course, self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute: [citing an authority] . . . municipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations: [citing authorities]. But if the general tenor of the statute indicates

an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid: [citing authorities].'"

Insofar as the Liquor Code is concerned, it is in the third class of statutes. The statute itself is silent as to whether municipalities are or are not permitted to enact taxation legislation relating specifically to the sales of liquor. The appellees disagree with this, emphasizing Section 1-104(a) of the statute, which specifically sets forth the following standard when interpreting the statute: "(a)   This act . . . shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose." They further remind us of our opinion in the *Tahiti Bar, Inc. Liquor License Case,* 395 Pa. 355, 360, 150 A. 2d 112, 115 (1959), where we said: "There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages." However, to concede plenary and exclusive control under the police power is not to concede the same under the taxation power.

In determining whether, by the enactment of the specific statute, the Commonwealth completely barred a municipality's enactment of an ordinance relating to the same field, we will refrain from striking down the local ordinance unless the Commonwealth has explicitly claimed the authority itself, or unless there is such actual, material conflict between the state and local powers that only by striking down the local power can the power of the wider constituency be protected.

As we said in *Retail Master Bakers A. v. Allegheny Co.,* 400 Pa. 1, 3, 161 A. 2d 36 (1960): ". . . [In such cases] the ordinance will not be stricken down unless it be clearly shown that the Legislature intended to pre-empt the field or unless the ordinance conflicts with the statute. . . ."

The appellees argue that there is irreconcilable conflict between the state Liquor Code and the ordinance. Arguing that "the power to tax involves the power to destroy," *McCulloch v. Maryland,* 4 Wheat. 316 (1819), appellees emphasize that there is no limit to the amount of tax the City could have authorized and that the regulatory effect of a special tax increases as the amount of the tax increases. Although that maxim is true, it is not applicable to our present situation. We are not dealing with an attempt on the part of Philadelphia to tax liquor so excessively that total prohibition is achieved. We are instead dealing with a specific ordinance seeking to raise revenue from a ten percent tax on the retail sales of liquor by restaurants and bars.

For this reason, the *Sawdey Liquor License Case,* 369 Pa. 19, 85 A. 2d 28 (1951), and *Hilovsky Liquor Case,* 379 Pa. 118, 108 A. 2d 705 (1954), which were emphasized by the appellees, the chancellor and the court en banc, are not applicable to the present case. Both *Sawdey* and *Hilovsky* concerned zoning ordinances which attempted to bar operations by liquor licensees in commercially-zoned areas merely because of their liquor sales. In this way the ordinances were attempts to "establish prohibition within the borders of the municipality without a vote of the electors on the question of local option as provided in Section 472 of the Liquor Code." *Hilovsky,* supra, at page 121. Consequently, the ordinances were in direct conflict with the Liquor Code and were invalid.

There is no showing that prohibition would result or that the holders of liquor licenses would be prevented from operating in Philadelphia. In fact, such a result was clearly not intended because if the sale of liquor by the drink were in fact curtailed in Philadelphia by the enactment of this ordinance, the Philadelphia School System would not obtain the revenues that this ordinance intended.

Consequently, if we were to examine the proposed taxation ordinance only in the light of the Liquor Code, we could not conclude that the legislature had clearly indicated that its statewide regulation of liquor was intended to preempt the field as to local taxation as well as regulation.

However, the enactment of the Liquor Code is not the only indication of the legislature's intent on this question. The state has entered the tax field by virtue of two acts, now effective, that impose taxes on the sale of liquor. One act specifically imposes an eighteen percent tax on all liquors as follows: "An emergency State tax is hereby imposed and assessed at the rate of eighteen percentum of the net price of all liquors sold by the board. The tax herein imposed shall be collected by the board from the purchasers of the liquor from the board. The amount of such eighteen percentum so collected by the board, under the provisions of this act, shall be paid into the State Treasury, through the department, in the manner and within the times herein specified, and shall be credited to the General Fund." Act of June 9, 1936, Ex. Sess., P. L. 13, §2, as amended, 47 P.S. 795.

The other act is the general statewide six percent sales and use tax which is applicable to many items in addition to liquor. However, liquor is treated differently from other items the sale of which is taxed under the sales tax. As to liquor, every sale, whether or not for resale, is taxed when made by the Pennsylvania

liquor store and is not taxed when resold by a dispenser. The tax on the sale of a liquor store is imposed as a result of the following definition of a "sale at retail" (Act of March 6, 1956, P. L. (1955) 1228, Art. I, §2, as amended, 72 P.S. 3403-2(j) (7) (d), Paragraph 6) : "The term 'sale at . . . retail' with respect to 'liquor' and 'malt or brewed beverages' shall include the sale of 'liquor' by any 'Pennsylvania liquor store' to any person for any purpose, and the sale of 'malt or brewed beverages' by a 'manufacturer of malt or brewed beverages', 'distributor' or 'importing distributor' to any person for any purpose, except sales by a 'manufacturer of malt or brewed beverages' to a 'distributor' or 'importing distributor' or sales by an 'importing distributor' to a 'distributor' within the meaning of the 'Liquor Code'. The term 'sale at retail' shall not include any sale of 'malt or brewed beverages' by a 'retail dispenser' or any sale of 'liquor' or 'malt or brewed beverages' by a person holding a 'retail liquor license' within the meaning of and pursuant to the provisions of the 'Liquor Code', but shall include any sale of 'liquor' or 'malt or brewed beverages' other than pursuant to the provisions of the 'Liquor Code'."

The real question presented by this case is whether, by the enactment of these two statutes, the legislature has intended to preempt the field of taxation specially imposed on the sale of liquor.

In the specific area of taxation, the legislature has given us further guidance to the solution of the difficult problem of reconciling the governmental relationship between state and local authorities by enacting a specific preemption provision in the enabling statute on which the local authority must rely for the validity of this tax.

The Sterling Act, on which Philadelphia must rely for authority validating this enactment, provides as follows: "From and after the effective date of this

act . . . the council of any city of the first or second class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect, or provide for the levying, assessment and collection of, such taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city of the first or second class, as it shall determine, *except that such council shall not have authority to levy, assess and collect, or provide for the levying, assessment and collection of, any tax on a privilege, transaction, subject or occupation or on personal property which is now or may hereafter become subject to a State tax or license fee.* (Emphasis supplied.) Act of August 5, 1932, Ex. Sess., P. L. 45, §1, 53 P.S. 15971.

We hold today that because the sales of liquor are already subject to two state taxes, the state has preempted the specific field of liquor sales for taxation purposes and Philadelphia is barred from enacting the ordinance in question.

The court en banc and the appellants both contend that the opposite conclusion is required by our recent decision in *Phila. Tax Rev. Bd. v. Smith, Kline & F. Lab.,* 437 Pa. 197, 262 A. 2d 135 (1970).

We do not agree. In *Smith, Kline* we interpreted "state license fee" to mean only those fees imposed for purposes of raising revenue. By so doing, we ascribed to the General Assembly the same philosophy of preemption, as contained in the various tax-enabling acts, which we have followed in developing our own preemption doctrine in connection with other areas where state legislation and local ordinances must be reconciled, i.e., the philosophy of abstaining from striking down a local ordinance unless there is direct conflict with a state statute. In the area of taxation, that philosophy means that if the local tax is not imposed directly on specific transactions on which the state is dependent for revenues, then the local ordinance poses

no real threat to the state's revenue plans. Consequently, the local tax is permitted. However, when the state decides to enter a specific area for purposes of raising state revenues, a municipal tax in the same area could pose a threat, either by causing a diminution of the taxed activity or by increasing the costs of collection. Consequently, the state has preempted that area insofar as specially directed taxation is concerned.

In *Smith, Kline,* we held that the registration fee required by The Drug, Device and Cosmetic Act was a regulatory measure not designed to produce revenue. Consequently, because the state had not preempted the field for purposes of raising revenue, the city was not barred from enacting a tax. In the case of sales of liquor, however, there can be no doubt that the two taxes, one for eighteen percent, the other for six percent, are clearly designed to produce revenue for the state.

Appellants also contend that the ordinance in question does not violate the preemption provision of the Sterling Act because it is imposed on a different transaction than that on which the two state taxes are imposed. According to this argument the local tax would be imposed on the transaction between the holder of the retail liquor license, i.e., the owner of the hotel or bar, and the consumer, whereas the state taxes are imposed on the transaction between the holder of the liquor license and his distributor, the state liquor store.

We do not accept this view. In our view, the state taxes on liquor are classic sales taxes. The only reason that the definition of sales in the case of liquor is different from the definition with regard to other items covered by the sales tax is because the existence of a statewide system of state-operated distribution centers for liquor made it possible to assure effective collection of the tax by imposing the tax on the sale at the state store.

The case of *Cahill v. Philadelphia,* 381 Pa. 611, 114 A. 2d 99 (1955), cited by the appellants, is inapposite. In that case the Philadelphia Mercantile License Tax (Ordinance of December 9, 1952) was challenged as violative of the preemption provisions of the Sterling Act when imposed on the gross receipts of holders of state liquor licenses because of the license fees which such licensees are required to pay. However, that case dealt with a gross-receipt tax aimed at business generally, rather than specifically at liquor sales. Moreover, in *Cahill* we explained that even though the license fees which licensees are required to pay did generate revenue, that revenue was turned over to the municipality rather than being appropriated by the state. In this way, *Cahill* was similar to the case of *McClelland v. Pittsburgh,* 358 Pa. 448, 57 A. 2d 846 (1948), because the state statute which was said to have preempted the taxation field was not a "state tax" within the statutory preemption provision since the tax was expressly imposed for county purposes.

Here, the state taxes were clearly imposed for state-wide purposes, the state has preempted the field and the city tax is invalid under the Sterling Act.

As to appellants' argument that because the court en banc ruling was based on the finding that the liquor code generally had preempted the field rather than the specific taxes which the state had imposed on liquor, our scope of review is limited to a determination of that issue, we need only repeat our view expressed in *Taylor v. Churchill V. Country Club,* 425 Pa. 266, 268, 228 A. 2d 768, 769 (1967) : "If a lower court makes a correct ruling, order, decision, or judgment or decree, but assigns an erroneous reason for its action, an appellate Court will affirm the lower Court's action, order or ruling or decision or judgment or decree, and assign the proper reason therefor."

The Decree of the lower Court is affirmed, each party to bear own costs.

Mr. Chief Justice BELL and Mr. Justice ROBERTS concur in the result.

Mr. Justice JONES took no part in the consideration or decision of this case.

Mr. Justice COHEN took no part in the decision of this case.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Under the so-called "Little Sterling Act" (Act of August 9, 1963, P. L. 640, as amended, 53 P.S. §16101 et seq.) the City Council of Philadelphia was given the power to authorize the Philadelphia School District Board of Education to impose any tax, for school purposes, which the city could impose for general revenue purposes. Pursuant thereto, Philadelphia City Council has adopted Ordinance No. 1861, amending Chapter 19-1800 of The Philadelphia Code. This ordinance authorizes the Board of Education to impose for general school purposes a tax, not to exceed ten percent of the sale price, "on the sale in the [School] District of liquor and malt and brewed beverages which are sold or dispensed during the tax year . . . by any hotel, restaurant or club, or other person licensed by the Commonwealth" to sell or dispense such beverages. Plaintiffs, being such licensees, contend that the City of Philadelphia has no power to impose such a tax and therefore cannot delegate the authority to do so to the Board of Education. Our inquiry, then, is directed to the extent of and limitations upon the city's power to tax.

The two basic reasons asserted by the appellees, and discussed by the majority, for the invalidity of the ordinance, are that (1) the regulation of the liquor industry and sales of liquor have been preempted by the Commonwealth by the enactment of the Liquor Code, Act of April 12, 1951, P. L. 90, *as amended,* 47 P.S.

§1-101 et seq., and (2) since the Commonwealth is already taxing the retail sale of liquor, the City of Philadelphia does not have the power to impose a tax on an over-the-counter sale of liquor because of the limitations of the Sterling Act, Act of August 5, 1932, Ex. Sess., P. L. 45, §1, *as amended,* 53 P.S. §15971. In my view, neither reason is meritorious.

1. As to the preemption issue, I agree with the majority that by enacting the Liquor Code, *supra,* the legislature did not indicate explicitly any intention that its statewide regulation of liquor (or brewed beverages) should preempt the field not only as to local regulation but also as to local taxation; neither do I see any indication that it meant to do so by implication. Moreover, we are not here concerned with a tax which is in reality regulation because so excessive as to be confiscatory. The appellee has not cited, nor does our research reveal, any cases where the doctrine of preemption as it exists in Pennsylvania has been applied so that state regulation of an industry or other area of state interest has the effect of preventing local taxation of the regulated field.[1]

I cannot, however, accede to the majority's proposition that preemption is a concept that, in Pennsylvania at least, is applicable to the field of taxation as well as that of regulation; specifically, that when the state enacts a specific tax for revenue purposes it thereby intends to occupy the field exclusively for itself. To my knowledge there has not heretofore existed in Pennsylvania a doctrine of preemption in the field of taxation, nor do I see any basis or need for creating one. Municipal subdivisions in Pennsylvania are creations of the sovereign state; they have no inherent power to tax, but

---

[1] See, e.g., *Harris-Welch, Inc. v. Dickson City Boro,* 420 Pa. 259, 216 A. 2d 329 (1966) ; *Dept. of Licenses v. Weber,* 394 Pa. 466, 147 A. 2d 326 (1959) ; *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A. 2d 616 (1951).

only such as the state gives them. The Pennsylvania legislature has from time to time made specific grants of such power. With respect to the City of Philadelphia, that power has been delegated by the Sterling Act, *supra*. That act grants to Philadelphia the power to levy and collect such taxes as it may determine "on persons, transactions, occupations, privileges, subjects and personal property", subject, however, to the exception that the city may not levy "any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee". The stated intent of the legislature in so providing was "to confer upon cities of the first class the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license. . . ." 53 P.S. §15971(a). The approach that has traditionally been followed, and which to me seems still to be proper and adequate, is simply to ascertain whether a tax levied by Philadelphia is or is not within its Sterling Act power. In practical effect, the inquiry becomes one of ascertaining whether the city is *without* such power because the "privilege, transaction, subject or occupation, or . . . personal property" sought to be taxed is already subject to a state tax or license fee.[2]

The inquiry is thus not whether the state has imposed a tax in a particular area of taxation; it is whether a particular state tax and city tax are coincident with respect to a privilege, transaction, subject or occu-

---

[2] There are many examples in the books of this approach to the problem. See, among others, *Tax Review Board v. Smith, Kline and French*, 437 Pa. 197, 262 A. 2d 135 (1970); *L. J. W. Realty Corp. v. Philadelphia*, 390 Pa. 197, 134 A. 2d 878 (1957); *Cahill v. Philadelphia*, 381 Pa. 611, 114 A. 2d 99 (1955); *National Biscuit Co. v. Philadelphia*, 374 Pa. 604, 98 A. 2d 182 (1953); *Murray v. Philadelphia*, 364 Pa. 157, 71 A. 2d 280 (1950).

pation, or to personal property. The appellees do not dispute that the state could tax (and therefore the city can tax) the sale of liquor, malt and brewed beverages as dispensed by state licensees; they assert that since the local tax and the state tax are both upon the sale of liquor, the subject of the taxes is the same, i.e., liquor; and the transaction is the same, i.e., sale of liquor. In my view, this is an overbroad reading of the Sterling Act.

The Commonwealth levies and collects two taxes in the area of liquor—the general 6% sales tax and the 18% emergency tax on liquors. The sales tax, Tax Act of 1963 for Education, Act of March 6, 1956, P. L. (1955) 1228, art. I, §1, *as amended,* 72 P.S. 3403-1 *et seq.,* is imposed upon "each separate sale at retail as defined herein" (72 P.S. 3403-201(a)). As to liquor, malt and brewed beverages, sales at retail are defined so as *to include* all sales of liquor by Pennsylvania liquor stores ("State Stores") to any person for any purpose and the sale of malt or brewed beverages from the manufacturer or distributor thereof to any person for any purpose, but *to exclude* sales of liquor by any person holding a retail liquor license or sales of malt and brewed beverages by a retail dispenser (72 P.S. 3403-2 (j)(7)(d)). The 18% Emergency Liquor Tax, Act of June 9, 1936, Ex. Sess., P. L. 13, §2, *as amended,* 47 P.S. §795, imposes a tax on "the net price of all liquors sold" by the Pennsylvania Liquor Control Board.[3]

It is clear to me that these state taxes are imposed upon a transaction, which is the sale of liquor as it is dispensed from the "State Stores" or, in the case of malt or brewed beverages, the sale of such beverages as

---

[3] The taxing clause provides in relevant part: "An emergency State tax is hereby imposed and assessed at the rate of Eighteen percentum of the net price of all liquors sold by the board. The tax herein imposed shall be collected by the board from the purchasers of the liquor from the board."

they are dispensed by the manufacturer or distributor. The proposed city tax authorized by Ordinance No. 1861, on the other hand, although a tax upon a transaction of sale, is upon an entirely different transaction, being a sale between different parties, at different times, and on a different subject.

It is of course true that both sales transactions involve liquor or brewed beverages, as the case may be, but this point in common is not determinative. The taxes are not taxes on property; they are taxes on sales. Moreover, although alcoholic beverages are involved in both sales, the entire context of the sales and, indeed, the form of dispensing of the articles sold, is different in the two situations. The Commonwealth chooses to tax only the liquor sales which are made by its State Stores, which must be by the unopened bottle (47 P.S. §3-305(d)), and to tax only the brewed beverage sales which are made by the distributors thereof, which must in general be by packages containing not less than 24 containers (47 P.S. §1-102). Neither the liquor sold at State Stores nor the malt or other brewed beverage sold by distributors may be consumed on the premises. In contrast, the proposed city tax is on the sale by licensees which sale must, in the case of liquor, be by "the glass, open bottle or other container, in any mixture" (47 P.S. §4-406(d)) for consumption on the premises and, in the case of malt or other brewed beverages, by individual containers for consumption on the premises, or, if to "take out", in quantities not in excess of 144 ounces (two "six packs") in a single sale to one person (47 P.S. §1-102).

The majority opinion, in rejecting the view that the transactions being taxed by the Commonwealth and the city, respectively, are not the same, gives as its reason that the Commonwealth taxes sales at the State Store level because of ease of collection through its own stores. Conceding that this may be the motivation for

the arrangement, it appears to me quite irrelevant to the determination of whether the same transaction as the state taxes at State Stores is sought to be taxed by the city at places other than State Stores.[4]

In sum, since the city has been granted by the Commonwealth the same power to tax as the Commonwealth itself possesses, since it is uncontradicted that the Commonwealth itself could enact a statute having the same content as the contested ordinance, and since the Commonwealth has not already taxed the over-the-counter sale of liquor and malt or brewed beverages, there is no basis for invalidating the ordinance as enacted by Philadelphia City Council. I would, therefore, reverse the decree of the court below and I accordingly dissent.

Mr. Justice EAGEN joins in this dissent.

---

[4] Another reason for the state scheme is probably that the imposition of a tax on sales by State Stores is the only method of reaching sales of liquor in unopened bottles, of which there is, needless to say, a substantial volume. None of such sales would be reached by the proposed city tax. It is true that holders of licenses to sell liquor, such as the restaurants, hotels, clubs, taverns whose sales would be reached by the proposed city tax, are obliged to pay the state sales taxes at the State Store level in the same manner and amount as individual purchasers for personal use. Such institutional purchasers, however, normally buy in bulk, and as such enjoy a wholesale price (47 P.S. §3-305(b)). The appellees argue that because the licensee has already paid a state sales tax on his purchase from the State Store, the tax on his resale amounts to tax "pyramiding" and therefore is violative of the state taxing scheme, citing *Commonwealth v. Wetzel*, 435 Pa. 468, 257 A. 2d 538 (1969). Though the Commonwealth's 6% sales tax does expressly exclude this tax on a sale made for resale, this exclusion in no way affects the city's power as granted by the Sterling Act.