## Beneficial Consumer Discount Co. v. City of Philadelphia

*Ray C. Stoner* and *James M. Sweet,* for plaintiffs.
*Ellis Eisen,* for defendant.

PRATTIS, *J.,* September 30, 1981—Defendant, City of Philadelphia preliminarily objects to plaintiffs' complaint in equity alleging (a) that this court lacks jurisdiction to hear an action on the matter, (b) that the complaint fails to set forth a cause of action for relief in equity, (c) that plaintiffs have improperly sought class action relief in violation of The Pennsylvania Rules of Civil Procedure.

At the argument before this court, counsel for the parties agreed that the court address itself to issues (a) and (b) and reserve judgment on (c).

The court concludes that it has jurisdiction to hear the matter and that the complaint cannot be dismissed for failure to set forth a cause of action.

## I. FACTUAL CONTEXTS

At this posture of the case, defendant admits all facts well pleaded. In 1953, the City of Philadelphia enacted the Mercantile Licenses Tax, subsequently made part of the Philadelphia Code in Section 19-1000 et seq. This was a gross receipts tax imposed upon all persons for the privilege of doing business in the City of Philadelphia.

In National Biscuit Co., et al v. City of Philadelphia, 374 Pa. 604, 98 A. 2d 183 (1953), the Supreme Court of Pennsylvania held that finance companies (which plaintiffs are) were not subject to Mercantile Licenses Tax because they paid what the court construed to be a "true" license fee to the Commonwealth of Pennsylvania.

In April, 1980, the City of Philadelphia, having reviewed various subsequent opinions of the Supreme Court of Pennsylvania, concluded that plaintiffs were subject to Mercantile Licenses Tax, and by formal opinion of the City Solicitor, implemented by formal notice by the Revenue Commissioner, liability for payment of the tax was asserted against the within plaintiffs. This suit ensued.

Plaintiffs are corporations engaged in the business of making consumer discount loans within the Commonwealth of Pennsylvania. Pursuant to the Consumer Discount Act of April 8, 1937, P.L. 262, as amended, 7 P.S. §6201 et seq., and the Department of Banking Code of May 1933, P.L. 565, as amended, 71 P.S. §733-1 et seq, the Department of Banking of the Commonwealth supervises and regulates the business of negotiations, investigations, and making of loans by consumer discount companies in this Commonwealth.

In this connection, the Department of Banking:

(a) conducts regular and comprehensive examinations of the books and records of each consumer discount company; (b) sets and insures that applicants meet all organizational and minimum capital requirements; (c) licenses new applicants in the business; (d) determines the requirements for maintenance of financial records and making of periodic reports; and (e) polices the practice of consumer discount companies with reference to interest charged, and collection and disclosure practices.

These activities by the State Department of Banking are paid for by fees assessed by the Department of Banking, which fees are specifically related to the costs of investigation and examination and which generate substantial revenue to the Commonwealth of Pennsylvania.

It is abundantly clear that consumer discount companies form an integral part of the banking and financial industry in Pennsylvania. That industry transcends the boundaries of local municipalities and geographic regions. The maintenance of uniform standards for the component parts of that industry is a critical interest of the Commonwealth of Pennsylvania, and is essential to the health, welfare and property of the citizens of the Commonwealth.

## II. THE GENERAL ASSEMBLY OF PENNSYLVANIA HAS MADE A SPECIFIC GRANT OF TAXING POWER TO THE CITY OF PHILADELPHIA.

The Sterling Act, of August 5, 1932, P.L. 45, 53 P.S. §15971, which authorizes a city of the first class to ". . . levy, assess and collect, . . . taxes on persons, transactions, occupations, privileges, subjects and personal property," provides: "such

council [of the City of Philadelphia] shall *not* have authority to levy, assess and collect . . . any tax on a privilege, transaction, . . . or on personal property, which is now or may hereafter become subject to a *State tax or license fee.*" (Emphasis supplied.)

This limitation is an expression of policy by the Commonwealth of Pennsylvania preempting and reserving the right to further preempt the field of taxation whenever it concludes that the welfare and economic well-being of the Commonwealth so requires.

In City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh, 488 Pa. 544, 552-554, 412 A. 2d 1366 (1980) the court held:

"It is well established in this Commonwealth that a municipal regulation may not intrude into areas preempted by the state. This concept is equally applicable to local taxation. See e.g., Allegheny Airlines v. Philadelphia, 453 Pa. 181, 309 A. 2d 157 (1973) (state or local airport head tax preempted by congressional legislation); United Tavern Owners v. Philadelphia School District, 441 Pa. 274, 272 A. 2d 868 (1971) (opinion announcing the judgment of the court) (municipal retail liquor tax preempted by state); Tempe v. Prudential Insurance Co., 109 Ariz. 429, 510 P. 2d 745 (1973) (municipality preempted by state from taxing insurance company rental income); East Ohio Gas Co. v. Akron, 7 Ohio St. 2d 73, 218 N.E. 2d 608 (1966) (municipality preempted by state from taxing utility income); Parker v. Silverton, 109 Or. 298, 220 P. 139 (1923) (municipality preempted by state from taxing transit company); see also McCulloch v. Maryland, 4 U.S. (4 Wheat. 316) 415 (Curt.Ed.), 4 L.Ed. 579 (1819) (state preempted by Congress from taxing national bank); Weston v. Charleston, 8 U.S. (2 Pet. 449) 171 (Curt. Ed.), 7

L.Ed. 481 (1829) (municipality preempted from taxing federal bonds); see generally Antieau, 2A Local Government Law §21.10 (1979 ed.); McQuillin, Municipal Corporations §44.190a (1973 ed.)
. . .

The Business Privilege Tax cannot be viewed in any sense as supplementary to, or consistent with, the Legislature's objectives in regulation of banks. Rather, the challenged local tax on bank revenues manifestly intrudes into the Legislature's regulatory schema. Such a direct tax burden on appellee state banks undercuts the Banking Department's responsibility, as well as its capacity, to regulate the soundness of banks, and promote their proper development. Were we to permit municipal taxing authorities in the Commonwealth to impose various business taxes upon state banks, such an accumulation of tax plans would surely impair the legislatively mandated supervisory authority of the Banking Department. Appellant may not, by the challenged tax ordinance, contravene the Legislature's plenary statewide schema for the regulation and operation of the Commonwealth's banking institutions.

Concluding, as we must, that taxation of bank revenues is preempted by the Commonwealth, and that the Business Privilege Tax impermissibly "impinges" upon this area, we hold that Pittsburgh's tax is invalid as applied to appellee state banks."

While the Deputy City Solicitor was commendably frank in advising the court of defendant's disagreement with the foregoing holding of the Supreme Court of Pennsylvania, and while there is no constraint on defendant's disagreement, there are constraints on this court's capacity to ignore the express rulings of the Supreme Court of Pennsyl-

vania. For this reason, defendant's demurrer will be overruled.

For the same reason, the court overrules defendant's preliminary objections on the issue of jurisdiction. Defendant asserts a lack of equitable jurisdiction in this court.

In National Biscuit Company, et al v. City of Philadelphia, 374 Pa. 604, 98 A. 2d 182 (1953), the Supreme Court of Pennsylvania disposed of this precise argument. That case also involved an action in an equity to enjoin the City of Philadelphia from imposing the Mercantile Licenses Tax upon consumer discount companies. The court concluded that companies were exempt from the Mercantile Licenses Tax, but had no difficulty in sustaining the injunctive power of the common pleas court over appellant taxpayers not subjected to comparable state attention.

Accordingly, the preliminary objections of defendant will be denied.

## ORDER

And now, October 1, 1981 upon consideration of the pleadings, oral argument and briefs, the preliminary objections of the City of Philadelphia, are denied.