## Appeal of Dale E. Sedeshe

*Peter B. Foster,* for appellant.
*Kenneth W. Makowski,* for Commonwealth.

DOWLING, *J.,* December 1, 1981—

Did Shakespeare Know Whereof He Spoke or What Has Amplification Done to the Sound of Music

We read in the Merchant of Venice, Act V. Sc. 1, of Lorenzo's paean to the food of love:

"For do but note a wild and wanton herd,
Or race of youthful and unhandled colts,
Fetching mad bounds, bellowing and neighing loud,
Which is the hot condition of their blood;
If they but hear perchance a trumpet sound,
Or any air of music touch their ears,
You shall perceive them make a mutual stand,
Their savage eyes turn'd to a modest gaze
By the sweet power of music; therefore the poet
Did feign the Orpheus drew trees, stones, and floods;
Since nought so stockish, hard, and full of rage,
But music for the time doth change his nature.
The man that hath no music in himself,
Nor is not moved with concord of sweet sounds,

Is fit for treasons, stratagems, and spoils;
The motions of his spirit are dull as night
and, his affections dark as Erebus:
Let no such man be trusted. Mark the music."

Jumping o're time and space we arrive at Junior Clock's Bar on Derry Street near the northern limits of the City of Harrisburg whose proprietor, Dale E. Sedeshe, laments that the servants of the state, in the guise of Liquor Control Board agents, have tuned him out by suspending his license for allegedly conducting his tavern in a noisy and disorderly fashion.

Following a hearing, the board found violations to have occurred on (a) October 10, 1980 when the licensee "used or permitted to be used on the inside of the licensed premises, a loudspeaker or similar device whereby the sound of music or other entertainment or advertisement thereof could be heard outside;"(b & c) October 25, 1980 and November 12, 1980 where he conducted the operation of the establishment in a noisy and disorderly manner. From the board's imposition of a 20 day gap in the concert series, the licensee has sought to elicit a responsive cord in this court.

There does appear to be a disharmony between recent decisions of the Commonwealth Court and the regulation which the Board found to have been violated on October 10.

The regulation states: "No licensee shall use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard on the oustide of the licensed premises." 40 Pa. Code §5.32(a).

In the matter of Banks, 59 Pa. Commonwealth Ct. 443, 429, A. 2d 1279 (1981), a decision the

writer is painfully aware of, it was charged that the licensed premises were conducted in a "noisy and/or disorderly manner" which averment was based upon section 471 of the Liquor Code of April 12, 1951, P.L. 90, as amended, 47 P.S. §4-471, which permits the board to cite a licensee "upon any other sufficient cause shown."

The court used some interesting language in Banks, at 445, 429 A. 2d 1279, 1280:

"We have held in the past that to be in violation of Section 471 of the Liquor Code a licensed premises must be operated in a noisy and disorderly fashion on a routine basis. In the matter of: Ciro's Lounge, 24 Pa. Commonwealth Ct. 589, 358 A. 2d 141 (1976). In Hude v. Commonwealth, 55 Pa. Commonwealth Ct. 1, 423 A. 2d 15 (1980), two occasions of noisy operations warranted a fine." 429 A. 2d 1279, 1280.

The reference to Hude skips a beat or two for that case did involve section 5.32(a) of the board's regulations.

In Hude the court extensively discussed the regulation and the board's authority to promulgate it. The regulation was attacked on two grounds. It was claimed that due process under the Fourteenth Amendment was violated because the regulation was not reasonably related to the exercise of the state police powers. It was also argued that it went off the scales and drowned out freedom of expression protected by the Federal and state constitutions. In rejecting these contentions, the court reviewed the basis of the board's authority to promulgate the regulation saying at 55 Pa. Commonwealth Ct. 1, 3, 4, 423 A. 2d 15, 16:

"The validity of a liquor-related state regulation rests upon the state's plenary power to control the

sale and use of alcoholic beverages by virtue of the Twenty-First Amendment to the United States Constitution. That the amendment 'conferred on the states something more than the normal state authority over public health, welfare and morals' is well-recognized. Fantastic Plastic, Inc. v. Pittsburgh, 32 Pa. Commonwealth Ct. 41, 377 A. 2d 1051 (1977); California v. LaRue, 407 U.S. 109, 93 S. Ct. 390, [34 L. Ed. 2d 342] (1972). Indeed 'there is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages.' United Tavern Owners of Philadelphia v. Philadelphia School District, 441 Pa. 274, 277, 272, A. 2d 868, 871 (1971).

"Judge Van Antwerpen, in the trial court, found the regulation to be reasonably related to the public purpose of controlling evils historically associated with the sale and consumption of liquor, namely, 'unruly behavior thought to be incited by loud, raucous music, and the resulting disturbance to the public and residents in the immediate vicinity of the liquor dispensing establishment. 'We agree, cognizant that Section 1-104(a) of the Liquor Code provides for liberal interpretation of provisions aimed at accomplishing a number of goals, specifically mentioning 'peace.'"

The court went on to hold that section 5.32(a) was reasonably related to the accomplishment of a specific valid state interest: protecting persons outside liquor establishments from interference with a peaceable environment saying that loud music in a tavern is not a fundamental right of free expression and that a total prohibition of external noise was not unreasonable.

In a measure, the court in Hude held that section 5.32(a) was within the board's wide discretion in administering the act. See section 208(h) of the Liquor Code which empowers the board to make regulations regarding the issuance of licenses and permits and the conduct, management, sanitation and equipment of licensed places.

The law as to prohibiting the licensee from conducting the premises in a noisy and/or disorderly manner has developed separately. Such soundings are based upon the "other sufficient cause" language of section 471 of the Liquor Code. It alleges essentially different conduct and seeks to protect another aspect of the public welfare, peace and morals contemplating noise and/or disorder whatever the source and irrespective of its relationship to outside the premises. The language of an averment under section 471 is directed at the manner in which the premises are conducted by the licensee. It is in this tonal pattern that the appellate courts have held that one spontaneous, isolated noise or disorder, whatever the degree, would be insufficient: In the matter of: Ciro's Lounge, 24 Pa. Commonwealth Ct. 589, 358 A. 2d 141 (1976).

In another octave, an averment based upon the regulation in effect charges that the licensee failed to comply with the conditions set forth in the regulation. The regulation seeks to protect the public outside the premises from the sound of music or entertainment emanating from loudspeakers on the premises. The language of the regulation requires that such sounds be contained within the licensed premises at all times. No course of conduct is addressed. The burden placed upon the licensee is not unreasonable. The regulation is not violated by an unexpected eruption of noise by a suddenly unruly patron with a loud voice. Instead,

the licensee is merely required to control the music and entertainment he supplies or permits through loudspeakers for the pleasure of his customers to the extent that the sound of it remains within the premises.

Any doubt that the decision in Banks was limited to citations under section 471 was removed by the court's footnoted remarks. After citing Ciro's and Hude and starting a new paragraph with the statement that the record indicated only one instance of noisy operation, the court stated in footnote 2: "Although the agent testified that on his second visit he found the bar to be noisy, he made no mention that the noise could be heard outside the premises. See, 40 Pa. Code §5.32(a)."

If the court had intended its previous paragraph to express the view that the single incident rule applied to citations involving the regulations also, the footnote would have been unnecessary and confusing. Instead, the court made it plain that a violation of the regulation was a different matter which would not be addressed because it was not raised by the record.

At the court hearing an enforcement officer testified that he was outside the premises around 10:00 pm on the date in question and that music and singing could be heard quite distinctly from as far away as 75 yards. He said there was some type of live performance being conducted with very loud amplification.

We also affirm the board's findings with respect to the instance of October 20, 1980. The testimony was that on that date there was a gathering within the premises of a motorcycle social and benevolent association, that there was much yelling, screaming and shouting culminating when one member of the society poured a pitcher of beer down a rival member's throat. Granted the convivialilty of such

groups, we still feel that this was sufficiently discordant.

However, we must disagree with the board's finding with respect to the instance of November 12, 1980. The evidence presented concerned a somewhat isolated instance where a patron menaced an undercover agent with a drawn sword. Yet, when requested by the barmaid to sheath his cutlass, the knighterrant did so. Under the circumstances we hesitate to characterize this medieval joustling incident, unusual as it may have been, as noisy and disorderly and would conclude that it was a spirited, but brief attempt to return to the lively days of Camelot.

Accordingly, we enter the following

### ORDER

And now December 1, 1981, we dismiss the appeal with respect to the incidents of October 10 and October 25 and sustain the appeal with respect to the instance of November 12.

We therefore modify the period of suspension and hold that the season may commence after an interval of 15 days.