## Commonwealth v. Pugh and Muha

*Robert W. Critchfield,* for Commonwealth.
*Dean A. Bowman,* for defendants.

SHAULIS, *J.,* May 21, 1982—These cases are before the court on appeal from summary convictions of a violation of a Jenner Township Ordinance, Number 1-79. The cases were consolidated for appeal because each case raises the identical legal issue and the facts are not in dispute. Defendants assert that the ordinance enacted by Jenner Township is null and void because the area of the law regulated, is preempted by the Pennsylvania Motor Vehicle Code (Vehicle Code).[1]

### FACTS

In each case, the parties have stipulated to the relevant facts. They are provided below.

---

1. 75 Pa.C.S.A. §101 et seq.

1. Ordiance no 1-79 was properly enacted according to the procedures required of second class townships. (Jenner Township is a second class township.)

2. The Jenner Township police officers issuing the citiations were, at the time of the citations, in proper and lawful uniform.

3. Both vehicles, when issued the citations, were in Jenner Township and operating on Jenner Township roads.

4. Both vehicles, when issued the citations, were equipped with tarpaulins but neither were being used to cover the load.

5. At the time of the citations, none of either vehicle's load was dropping or sifting from the truck.

## DISCUSSION

Jenner Township, in an apparent attempt to prevent the sifting of coal dust from the numerous coal trucks which regularly pass through the township, enacted Ordinance no. 1-79, relying on its general policy powers.[2] It provides in pertinent part as follows:

--------

2. Counsel for the Commonwealth expressed this reasoning at argument before the court. It should be noted, however, that second class townships do not possess general police powers. They possess only those powers which are granted to them by the legislature, Com. v. Hanzlik, 400 Pa. 134, 136, 161 A. 2d 340, 341 (1960); Holland Enterprises, Inc. v. Joka, ____Pa. Commonwealth Ct. ____, 439 A. 2d 876 (1982) and police powers are not among those granted. 53 P.S. 6501 et seq. Therefore, any "police power" exercised by a second class township is by implication or derivation of an expressly granted power. See 53 P.S. §65747 and Com. v. Ashenfelder, 413 Pa. 517, 198 A. 2d 514 (1964).

## "ORDINANCE NO. 1-79

THE Township of Jenner hereby ordains as follows under the authority of 'The Second Class Township Code':

*SECTION* 1: No vehicle carrying inanimate contents shall be driven or moved on any Township road within Jenner Township, Somerset County, Pennsylvania, unless such vehicle is so covered or enclosed with a tarpaulin, so as to prevent the escape of soot, dust, smoke, ashes or other substances or material from such contents, provided, however, that this Ordinance shall not apply to vehicles operated by any governmental agency engaged in maintaining the public road system."

Defendants were cited for a violation of this ordinance in each instance because they had no tarpaulins covering their loads even though nothing from either load was dropping or sifting from the trucks.

The Pennsylvania State Legislature in 1976 prepared and passed a comprehensive code for the regulation of motor vehicles. In the Vehicle Code, the legislature has also dealt with the problem of properly securing loads in vehicles. That provision reads in part:

"§4903. Securing Loads in Vehicles

(a) General rule.—No vehicle shall be driven or moved on any highway unless the vehicle is so constructed or loaded as to prevent any of its load from dropping, sifting, leaking or otherwise escaping.

(b) Fastening load.—Every load on a vehicle shall be fastened so as to prevent the load or cover-

ing from becoming loose, detached or in any manner a hazard to other users of the highway."[3]

Defendants argue here that §4903 of the Vehicle Code preempts Jenner Township Ordinance No. 1-79 and as a result, that ordinance is null and void and must be stricken. It remains for us to make that determination.

It is the general law of Pennsylvania that when ruling on a question of statutory preemption, a court must consider a number of factors. The Pennsylvania Supreme Court in Department of Licenses and Inspections, Board of License and Inspection Review v. Weber, 394 Pa. 466, 468-469, 147 A. 2d 326 (1959) stated them eloquently:

"Of course, it is obvious that where a statute specifically declares it has planted the flag of preemption in a field, all ordinances on the subject die away as if they did not exist. It is also apparent that, even if the statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention, all ordinances touching the topic of exclusive control fade away into limbo of 'innocuous desuetude.' However, where the Act is silent as to monopolistic domination and a municiple ordinance provides for a localized procedure which furthers the salutary scope of the Act, the ordinance is welcomed as an ally, bringing reinforcements into the field of attainment of the statute's objectives."[4]

3. 75 Pa.C.S.A. §4903. "Any highway" includes township roads. 75 Pa.C.S.A. §102 Definitions, "Highways."

4. The leading case on the suject of preemption is W. Pa. Rest Ass'n. v. Pittsburgh, 366 Pa. 374, 77 A. 2d 616 (1951). See Harris-Walsh, Inc. v. Borough, 259, 216 A. 2d 329 (1966); United Tavern Owners v. Philadelphia School District, 441 Pa. 274, 272 A. 2d 868 (1971) and City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh, 488 Pa. 544, 412 A. 2d 1366 (1980) for other examinatio;ns of the field of preemption.

Thus, we must determine whether or not the Vehicle Code has "planted the flag of preemption" in the field of vehicle regulation. To do this, we must look to the specific provisions and language of the statute itself. Section 4903 of the Vehicle Code states nothing with regard to the exclusivity of regulation concerning load control. It speaks only of requiring vehicles to be securely loaded and of the ability of the Department of Transportation to promulgate regulations concerning devices used to prevent spillage or leakage.[5] However, §6101 of the Vehicle Code[6] expresses the general applicability of the Vehicle Code in a very clear and concise manner.

"§6101. Applicability and Uniformity of Title.

The provisions of this title shall be applicable and uniform throughout this Commonwealth and in all political subdivisions in this Commonwealth, and no local authority shall enact or enforce any ordinance on a matter covered by the provisions of this title unless expressly authorized."

This provision can only be interpreted as meaning that a political subdivision (including second class townships) may only enact ordiances regarding matters covered by the Vehicle Code when it is specifically authorized to do so. Section 4903 of the Vehicle Code, as stated above, does not provide the express authorization needed. Therefore, to uphold

---

5. See 75 Pa.C.S.A. §4903(d).

"(d) Establishment of standards for fastening devices.— The department may promulgate regulations establishing minimum standards governing types and numbers of devices to be used in securing loads to prevent spillage and leakage of a load while in transit."

This language alone may imply preemption of the field. However, because of the rationale that follows, we do not believe implied or indirect preemption is appropriate.

6. 75 Pa.C.S.A. §6101.

the ordinance, we must look elsewhere in the Vehicle Code. Our search of the Vehicle Code yielded only one other possible provision which could provide the authorization required; §6109.[7] This provision enumerates what has been considered by the legislature to be reasonable exercises of police power. However, as noted before, second class townships do not have any general police powers; they possess only those powers specifically granted to them by the legislature.[8] Nonetheless, it is our conclusion that the legislature, when enacting §6109, meant to include second class townships in its definition of local authorities.[9]

Only one of the powers enumerated could possibly apply to the present situation and that is §6109(a)(20):

(a) Enumeration of police powers.—The provisions of this title shall not be deemed to prevent the department on State-designated highways and local authorities on streets or highways within their physicial boundaries from the reasonable exercise of their police powers. The following are presumed to be reasonable exercises of police power:

• • •

(20) Adopting and enforcing such temporary or experimental regulations as may be necessary to cover emergencies or special conditions."

However, this provision does not even apply because the problem at hand (materials dropping or sifting from vehicle loads) is not a special condi-

---

7. 75 Pa.C.S.A. §6109.

8. See Footnote 2.

9. 75 Pa.C.S.A. §102 Definitions: "'Local Authorities.' County, municipal and other local boards or bodies having authority to enact laws relating to traffic."

tion. It is clearly contemplated by §4903(a)(b) and (d) where the legislature specifically mentions coverings and permits the Department of Transportation to promulgate regulations with regard thereto.

It should also be noted, that the basic purpose of the statute (§4903) is the same as that of the township ordinance; to prevent the escape of dirt, dust and other materials onto the highways of our state. The statute was enacted to protect the safety of other travelers and to promote the health and welfare of those living near the highways. It does this in a very reasonable manner, by making the escape of any material a violation punishable under the Vehicle Code. However, the township ordinance exceeds this purpose. By forcing the use of a tarpaulin, the ordinance creates a violation for nonuse even when there is no material escaping from the vehicle and thus, no need to avidly protect the public.[10] As such, even if the township had the power to enact such an ordinance, it would still be struck down as an unreasonable and excessive use of that power.

There being no express authority in the Vehicle Code for second class townships to enact an ordinance regarding the sifting of materials from vehicle loads, §6101 controls and preempts Jenner Township Ordinance No. 1-79.[11] Therefore, Jenner

---

10. It should be realized that if, in the present situation, defendants had no tarpaulin on their trucks and the materials being hauled were dropping or sifting from the trucks, defendants would have been in violation of the Vehicle Code and could properly have been issued a citation.

11. See Fiore V. Township of Elizabeth, 130 P.L.J. 184 (1982) and City of Pittsburgh v. Municipality of Monroeville, 129 P.L.J. 380 (1981) as cases which have held that the Commonwealth has preempted the entire field of motor vehicle regulation.

Townwhip Ordinance No. 1-79 is declared null and void and defendants' appeals are sustained.

### ORDER

Now, May 21, 1982, we find and adjudge the defendants not guilty in each case.

Costs on County of Somerset.