**CLEMENT & MULLER, INC.**

v.

**TAX REVIEW BOARD OF CITY OF PHILADELPHIA.**

**CITY OF PHILADELPHIA, Appellant,**

v.

**TAX REVIEW BOARD OF CITY OF PHILADELPHIA To the Use of GARABET, LTD.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.

Decided May 11, 1995.

Reargument Denied July 10, 1995.

Richard Feder, Deputy City Sol., for appellant.

Stewart M. Weintraub, for appellees.

Before COLINS, President Judge, FRIEDMAN, J., and KELTON, Senior Judge.

COLINS, President Judge.

The City of Philadelphia (City) appeals from the June 15, 1994 decision of the Court of Common Pleas of Philadelphia County, which concluded that the City may not collect its business privilege tax[1] from beer distributors doing business within its jurisdiction because comprehensive regulation of the liquor industry evidences the legislature's intent to preempt all local taxation. We reverse.

Clement & Muller, Inc. and Garabet, Ltd. (Taxpayers) are beer distributors in the City. The Taxpayers filed petitions for refund appeals and petitions for review and waiver of interest and penalty with the Philadelphia Tax Review Board (Board) challenging the City's business privilege tax. Before the Board, the Taxpayers asserted that the City could not collect its business privilege tax from beer distributors 1) because 53 P.S. § 15971,[2] the general provision governing the subjects of taxation by first-class cities, does not authorize it and 2) because the Liquor Code[3] preempts the local tax.

The Board rejected the Taxpayers' claims. The Board reasoned that the General Assembly's enactment of the First Class City Business Tax Reform Act (Enabling Act)[4] shows its intent not to preempt the imposition of business taxes by the City. The Board noted that the Enabling Act makes special provision for specific "regulated industries" that do not include those regulated by the Liquor Code. The Board specifically held that the

Pennsylvania Supreme Court's decision in *Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986), does not control in this case because this case involves a different enabling act. Without a formal opinion, the Court of Common Pleas reversed the Board, rejecting its reasons for distinguishing *Wilsbach.*

In local agency appeals where the agency record was complete and the trial court did not take additional evidence, our review is of the local agency, not the common pleas court. Section 754(b) of the Administrative Agency Law, 2 Pa.C.S. § 754(b). Our scope of review is the same as that of the trial court taking no additional evidence; that is, whether constitutional rights were violated, whether an error of law was committed, or whether the Board's findings of fact were supported by substantial evidence. *Department of Revenue v. Tax Review Board*, 157 Pa.Commonwealth Ct. 43, 628 A.2d 1220 (1993).

The question before this Court, whether the Commonwealth's regulation of the liquor industry preempts the City's imposition of its business privilege tax on beer distributors, calls for a conclusion of law; therefore, the Board's determination in this matter is reviewable *de novo.*

**Wilsbach and Regulatory Preemption**

We begin our analysis with *Wilsbach.* In that case, a beer distributor challenged the validity of a municipal business privilege tax 1) on the grounds that the comprehensive nature of the Liquor Code preempts local taxation of the alcoholic beverage industry and 2) on the grounds that the applicable local tax enabling act prohibits a municipality from taxing where the state already imposes a tax or license fee. The Pennsylvania Supreme Court, in a plurality opinion, concluded that

the legislature has adopted a scheme of regulation so pervasive over the entire al-

---

1. The Philadelphia Code, Chapter 19–2600.

2. Section 1 of the Act of August 5, 1932, Ex. Sess., P.L. 45, *as amended*, 53 P.S. § 15971.

3. Act of April 12, 1951, P.L. 90, as reenacted and amended by the Act of June 29, 1987, P.L. 32, *as amended*, 47 P.S. §§ 1–101—8–803.

4. Act of May 30, 1984, P.L. 345, 53 P.S. §§ 16181–16193.

coholic beverage industry, that it has 'preempted the field' to the exclusion of all interference from subordinate legislative bodies. Such pre-emption by the legislature bars local legislative control by regulation or taxation.

*Wilsbach,* 513 Pa. at 224, 519 A.2d at 402.

Although *Wilsbach* is factually similar to the instant case, the Board perceptively recognized that the instant case involves some important dissimilarities that lead to the opposite conclusion. We cannot disagree. This Court has more than once held that the *Wilsbach* holding with respect to regulatory preemption is of limited precedential value and should not be extended.[5] Furthermore, we are mindful not to rely on a plurality opinion where the existence of multiple concurrences and dissents evidences a fragmented voting pattern.[6]

The Board followed the *Wilsbach* standard for examining legislation to determine whether preemption arises. In *Wilsbach* the Supreme Court adopted the standard it articulated in *Western Pennsylvania Restaurant Association v. Pittsburgh,* 366 Pa. 374, 77 A.2d 616 (1951). Under that standard, when a statute is silent as to whether local governments may enact supplemental legislation, as is the case with the Liquor Code,

> [i]t is, of course, self-evident that a municipal ordinance cannot be sustained to the extent that it is contradictory to, or inconsistent with, a state statute.... [M]unicipalities in the exercise of the police power may regulate certain occupations by imposing restrictions which are in addition to, and not in conflict with, statutory regulations ... but if the general tenor of the statute indicates an intention on the part of the legislature that it should not be supplemented by municipal bodies, that intention must be given effect and the attempted local legislation held invalid....

*Wilsbach,* 513 Pa. at 219, 519 A.2d at 399 (quoting *Western Pennsylvania Restaurant*

*Association,* 366 Pa. at 381, 77 A.2d at 620 (citations omitted)).

■ Guided by that standard, the Board weighed the silence of the Liquor Code against the explicit language of Section 4(a) of the Enabling Act and concluded that the express intention of the legislature was to authorize first-class cities to levy a business privilege tax on all businesses.

> Notwithstanding a contrary provision of the law of the Commonwealth, including, but not limited to, ... the Tax Reform Code of 1971, and, unless otherwise exempted or excluded from the payment of tax by ordinance of the city ... taking advantage of this authorization to tax, every person engaging in any business in a city of the first class, ... shall pay an annual tax....

53 P.S. § 16184(a). Section 2 of the Enabling Act gives preferential treatment, but does not exempt, "regulated industries," which it defines as those "subject to a tax pursuant to Article VII [Bank Shares Tax], VIII [Title Insurance and Trust Companies Tax], IX [Insurance Premiums Tax] or XV [Mutual Thrift Institutions Tax] of the Tax Reform Code of 1971 or any public utility...." 53 P.S. § 16182. The alcoholic beverage industry is clearly not a regulated industry for the purposes of the Enabling Act. The City's business privilege tax was enacted pursuant to the terms of the Enabling Act and frequently makes references to the Enabling Act's provisions. The Philadelphia Code, Chapter 19–2600.

■ Although the regulatory scheme of the Liquor Code is indeed pervasive and covers the entire alcoholic beverage industry, it cannot be said that the general tenor of the regulatory scheme in any way indicates a legislative intention that municipal bodies should not be able to enact nonregulatory, revenue-raising measures that might arguably supplement that scheme. Keeping in

---

**5.** *E.g., Philadelphia v. Tax Review Board,* 144 Pa.Commonwealth Ct. 374, 377, 601 A.2d 875, 976, *petition for allowance of appeal denied,* 531 Pa. 649, 612 A.2d 986 (1992). We also noted the current makeup of the bench with respect to their attitudes toward the doctrine of preemption.

**6.** *See e.g., Rose View Manor, Inc. v. City of Williamsport,* 157 Pa.Commonwealth Ct. 410, 630 A.2d 474 (1993).

mind the Liquor Code's stated purpose as "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon ...[,]" Section 104(a) of the Liquor Code, 47 P.S. § 1–104(a), and the effects of its provisions as a mechanism of control, it is clear that the intention of the legislature was plenary and exclusive control over the use and sale of alcoholic beverages. Neither did the legislature express any intention, explicit or implicit, anywhere in the Liquor Code, that taxes and license fees associated with the manufacture and sale of alcoholic beverages were meant as a source of revenue or that such revenue should be exclusive to the Commonwealth.

"[T]o concede plenary and exclusive control under the police power is not to concede the same under the taxation power." *United Tavern Owners of Philadelphia v. Philadelphia School District*, 441 Pa. 274, 280, 272 A.2d 868, 871 (1971). After rejecting the premise that the Liquor Code completely preempts local legislation in the field, the court in *United Tavern Owners* invalidated the school district's tax, concluding that where the Commonwealth had already imposed a sales tax and an eighteen percent premium on liquor sales, it had preempted the specific field of liquor sales. Shortly thereafter, the legislature enacted the First Class School District Liquor Sales Tax Act of 1971, Act of June 10, 1971, P.L. 153, 53 P.S. §§ 16131–16140, authorizing the sort of tax the court invalidated and contradicting the court's conclusion as to preemption.

In contrast, the result in *Wilsbach* rests on the legislature's having expressed a contrary intention as to a second-class municipality's taxing authority. In *Wilsbach*, the municipality enacted a business privilege tax under the authority of an enabling act that by its own terms invalidated the tax.[7] Through the limiting language of the enabling act, the legislature voiced its intention that the tax be invalidated because the Commonwealth, through the Liquor Code, had applied a fee or tax to the subject of the tax. In the present case, Section 4(a) of the Enabling Act contains express language indicating the contrary intention that the first-class city business tax apply to any and all businesses. 53 P.S. § 16184(a).

**Philadelphia Business Privilege Tax**

"[W]hether an enactment is a tax or a regulatory measure does not depend on whether it is called a 'license' or a 'tax' but rather on the purposes for which it was enacted." *City of Wilkes–Barre v. Ebert*, 22 Pa.Commonwealth Ct. 356, 359, 349 A.2d 520, 522 (1975). "The common distinction is that taxes are revenue-producing measures authorized under the taxing power of government; while license fees are regulatory measures intended to cover the cost of administering a regulatory scheme authorized under the police power of government." *Philadelphia v. SEPTA*, 8 Pa.Commonwealth Ct. 280, 287, 303 A.2d 247, 251 (1973).

■ The City's business privilege tax does not regulate or impose restrictions on the alcoholic beverage industry. It applies equally to all businesses, and its purpose is to raise revenue, not to regulate. The tax is not contradictory to, or in conflict with, the Commonwealth's regulatory scheme, nor does it duplicate any revenue-raising tax imposed by the Commonwealth.

The Commonwealth's taxes on the alcoholic beverage industry further the purposes of the Liquor Code by limiting sales and consumption through permit requirements and through premiums. The Spiritous and Vi-

7. The Local Tax Enabling Act applicable in *Wilsbach* provided, with respect to taxes enacted by third-class cities,

If, subsequent to the passage of any ordinance or resolution under the authority of this act, the General Assembly shall impose a tax or license fee on any privilege, transactions, subject or occupation, ... taxed by any such political subdivision hereunder, the act of Assembly imposing the State tax or license fee thereon shall automatically vacate the ordinance or resolution passed under the authority of this act.... It is the intention of this section to confer ... the power to levy, assess and collect taxes upon any and all subjects of taxation, except as above restricted and limited, which the Commonwealth has power to tax but which it does not tax or license....

Section 3 of the Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. § 6903.

nous Liquor Tax Law[8] subjects manufacturers to a tax on the privilege of manufacturing and as such acts as a permit to engage in such activities. The Malt Beverage Tax Law[9] imposes a similar tax on manufacturers and on persons who ship or transport such beverages into the Commonwealth. The act known as the Emergency Liquor Tax[10] adds eighteen percent to the retail cost of all liquors sold by the Liquor Control Board and is paid by the purchaser.

In contrast to the Liquor Code's taxes and license fees, the City's business privilege tax is a revenue measure applied to all businesses as a percentage of net income. By no means does the City's tax represent an attempt to regulate or control the sale and consumption of alcoholic beverages, nor can it be said to have that effect. The subject of the City's tax is the carrying on, for gain or profit, any trade, business, profession, vocation, or commercial activity or making sales within the City. The Philadelphia Code, § 19-2601. The purpose and effect of the City's tax is to raise revenue, not to regulate or control the alcoholic beverage industry.

Accordingly, we find that the Philadelphia business privilege tax is a valid exercise of taxing authority granted by the General Assembly. We also find that the Commonwealth's plenary and exclusive control over the alcoholic beverage industry does not preempt the local enactment. The tax does not contradict or conflict with the Commonwealth's regulatory scheme as embodied in the Liquor Code, which expressly focuses on control over alcohol sales and consumption.

### ORDER

AND NOW, this 11th day of May, 1995, the decision of the Court of Common Pleas of Philadelphia County in the above-captioned matter is reversed.

**8.** Act of December 5, 1933, 1933–34 Sp.Sess., P.L. 38, 47 P.S. §§ 745–767.

**9.** Act of May 5, 1933, P.L. 284, *as amended,* 47 P.S. §§ 103–120.3.

**10.** Act of June 9, 1936, Ex.Sess., P.L. 13, *as amended,* 47 P.S. §§ 794–796.