## Commonwealth *v.* Wetzel, Appellant.

Argued May 27, 1969. Before BELL, C.J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Rod J. Pera*, with him *Richard C. Fox*, and *McNees, Wallace & Nurick*, for appellant.

*Eugene J. Anastasio*, Deputy Attorney General, with him *William C. Sennett*, Attorney General, for Commonwealth, appellee.

*William Anderson*, and *Smith & McCleary*, for amicus curiae.

OPINION BY MR. JUSTICE POMEROY, October 9, 1969:

This appeal from a judgment of the Court of Common Pleas of Dauphin County (Commonwealth Docket) upholding a decision of the Board of Finance and Revenue concerns the availability of the "sale for resale" exemption from state sales taxation under the Tax Act of 1963 for Education[1] in the sale of stud services for breeding standardbred (harness) horses later sold in the market.

Appellant Wetzel is engaged in the business of breeding and raising standardbred horses for sale. In May,

---

[1] Act of March 6, 1956, P.L. [1955] 1228, as amended, 72 P.S. §3403-1 et seq.

1965, he sent two mares to Hempt Farms for the purpose of having the mares bred to stallions standing at Hempt Farms. Wetzel agreed with Hempt Farms that the $500 charge for the service of each of the stallions would be deferred and paid by way of deduction from the proceeds to be derived from the sale of the foals by Hempt Farms for the account of appellant. Thereafter both mares foaled. The two foals were sold; and sales tax for both sales was collected thereon and remitted to the Commonwealth. Subsequently Hempt Farms, after having deducted the service fees of $500 each and a sales tax of $25 with respect to each service fee, transmitted the net proceeds to appellant, and the sales tax was reported and paid by Hempt Farms to the Commonwealth.

Appellant filed with the Bureau of Sales and Use Tax a timely petition for refund, claiming a refund of the $50 tax imposed on the service fees. The Sales Tax Board and, upon review, the Board of Finance and Revenue, denied the appellant's claim. Appellant then appealed to the Court of Common Pleas of Dauphin County, where the case was submitted upon a stipulation of facts and waiver of jury trial. The court en banc, in an opinion by Judge SHELLEY, held for the Commonwealth and dismissed the appeal. The taxpayer's exceptions were overruled, and final judgment was entered against appellant and in favor of the Commonwealth. This appeal followed.

The Tax Act of 1963 for Education, formerly the Selective Sales and Use Tax Act, imposes a tax, collected by the vendor from the purchaser, upon "each separate sale at retail," defined, inter alia, under Section 2(j)(1) as "Any transfer, for consideration, of the ownership, custody or possession of tangible personal property." The Court of Common Pleas of Dauphin County had held earlier in Commonwealth v. Hanover Shoe Farms, Inc., 77 Dau. 296, 304 (C.P.

1961), 78 Dau. 209 (C.P. 1962), *aff'd* 408 Pa. 234, 182 A. 2d 511 (1962), that since the stud services involved a transfer of semen from the stallion to the mare, the seminal fluid represented tangible personal property under the statute; appellant therefore does not question that his purchase of the male horses' services amounts to a transfer of personal property.[2] Under Section 2(j)(7) of the Act, however, the term "sale at retail" does not reach "any . . . transfer . . . for the purpose of resale." Section 2(h)(2) defines "resale" as including "the physical incorporation of personal property as an ingredient or constituent into other personal property which is to be sold in the regular course of business . . ." Appellant's position is that the stud service charges here involved come within this "sale for resale" exemption. The rationale is that the semen provided by the Hempt Farms stallion, in uniting with the ovum of appellant's mare to produce a foal, represents personal property physically incorporated into other personal property to be sold in the regular course of business.

Appellant correctly contends that the legislature included the "sale for resale" exemption within the Act in order to eliminate tax "pyramiding" otherwise caused in the typical situation of the middleman buying from the producer in order to sell to the retailer who in turn resells the product to the ultimate consumer. Cf. *Commonwealth v. Lafferty,* 426 Pa. 541, at 548, 233 A. 2d 256 (1967). Since the consumer pays the sales tax, any requirement that the retailer or middle-

---

[2] The term "sale at retail", as used in the Tax Act of 1963 for Education, reaches the rendition of certain specified services not including the kind of "services" involved in the case at bar. See Act of March 6, 1956, P.L. [1955] 1228, §2(f), as amended, 72 P.S. §3403-2(j). Accordingly, the sale of the stud services of a stallion becomes a taxable event under the Act only because it includes the transfer of tangible personal property.

man should be obligated for an additional sales levy effects double taxation with respect to the same item of commerce. The legislature evidently concluded that the case of the assembler who purchases various items from a supplier, puts them together to form another product, and then sells such end-product to a consumer should be likewise removed from the same danger of double taxation; hence the exemption as a "sale for resale" of the transaction between the assembler and the supplier. Since in the case at bar the sales levy reaches the transfer of the foal which resulted from the stallion's services, appellant points out that any taxation of the rendition of such services also amounts to "pyramiding."

The argument advanced by appellant is ingenious and bears a superficial validity in that appellant is not the ultimate consumer of the end-product. The contention ignores, however, the more relevant question of the meaning of the legislation in its definition of a "sale for resale." As the Statutory Construction Act[3] indicates, "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature." A view of the statutory pattern as a whole satisfies us that the lawmakers never intended that biological processes be included within the concept of "physical incorporation" written into Section 2(h)(2) of the Act.

The Tax Act of 1963 for Education recognized the existence of commercial activity involving biological processes and, instead of endeavoring to link them in some fashion with either manufacturing or assembly operations, devoted a separate and distinct section to the subject. Accordingly, §2(j) of the Act specifically exempts from sales taxation "the transfer of tangible personal property . . . to be used or consumed direct-

---

[3] Act of May 28, 1937, P.L. 1019, as amended, 46 P.S. §551.

ly in any of the operations of (b) farming, dairying, agriculture, horticulture, or floriculture when engaged in as a business enterprise." The Dauphin County Court ruled in *Commonwealth v. Western Pennsylvania Fur Farmers Cooperative Association*, 77 Dau. 276 (C.P. 1961) that the raising and breeding of mink did not come within the various categories of "farming, dairying, agriculture . . ." established in the statute. As a result, the sales tax was held to apply to the sale of feed and supplies to mink breeders. On the basis of the same reasoning the same court, in *Commonwealth v. Hanover Shoe Farms, Inc., supra,* denied the agriculture exemption to a taxpayer engaged in the grazing, exercising and breeding of standardbred horses, the same activity engaged in by appellant in the case at bar. Thus, the sales tax was held to apply to the sale of seminal fluid to standardbred horse breeders.

Since *Hanover Shoe Farms, supra,* effectively closed off the horse breeding industry from the specific sales tax exemption afforded farming and similar businesses, appellant resorts to the more general provision of Section 2(h)(2) intended to benefit those engaged in assembly operations. This same argument was advanced by the mink breeders in *Western Pennsylvania Fur Farmers, supra,* as an alternative to the agriculture exception of §2(j) and was dismissed by the Dauphin County Court with the observation that the sale of a pelt does not represent the resale of the feed or other supplies used in producing the pelt. On the same basis, utilizing the ordinary sense of the term "sale for resale," we agree that the Tax Act of 1963 for Education does not include the sale of the foal as the resale of the semen which contributed to the creation of the animal. Consequently, the sale of the semen represents a taxable event under the sales tax levy.

We note, in conclusion, that *Western Pennsylvania Fur Farmers, supra,* and *Hanover Shoe Farms, supra,*

holding that sales of personal property to businesses engaged in breeding certain kinds of animals were not excluded from the sales tax, were decided prior to the enactment of a wide variety of amendments to the Act of March 6, 1956, by the Tax Act of 1963 for Education. The legislature, however, made no changes with respect to the sections at issue. The presumption arises that the legislature intended to continue the taxation of the sale of stud services to standardbred horsebreeders under the statute. See Statutory Construction Act, *supra,* 46 P.S. §552(4).

Judgment affirmed.

Mr. Chief Justice BELL and Mr. Justice ROBERTS dissent.

Mr. Justice JONES took no part in the consideration or decision of this case.