585 A.2d 593

**HEMPT BROS., INC., Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

**HEMPT FARMS, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 1990.

Decided Jan. 10, 1991.

Horace A. Johnson, Johnson, Duffie, Stewart & Weidner, Lemoyne, for petitioners.

John J. Butchar, Deputy Atty. Gen., with him, Ernest D. Preate, Jr., Atty. Gen., Harrisburg, for respondent.

Before McGINLEY and BYER, JJ., and CRUMLISH, Jr., Senior Judge.

McGINLEY, Judge.

Hempt Bros., Inc. and Hempt Farms (Petitioners) petition for review of orders of the Board of Finance and Revenue (Board) sustaining decisions of the Board of Appeals of the Department of Revenue (Department) which sustained a use tax assessed against Petitioners on their purchase of shares in four syndications of standard bred stallions. The issue presented for our review is whether the Petitioners' purchase of shares in the syndications, which entitled Petitioners to have a certain number of mares artificially inseminated with the stallions' sperm, resulted in the acquisition of ownership interests subject to Pennsylvania use tax. We affirm.

Petitioners were audited by the Department for the audit period of June 1, 1979 through June 30, 1983 and assessed use taxes and penalties on their purchase of shares in the syndications. Petitioners filed petitions for reassessment with the Department's Board of Appeals. The Board of

Appeals abated the penalties but sustained the use tax deficiencies. Petitioners subsequently appealed to the Board which sustained the decisions of the Board of Appeals. Petitioners appeal to this Court seeking review of the Board's decisions.

Section 7202(b) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 Pa.S. § 7202(b) provides:

> (b) There is hereby imposed upon the use, on and after the effective date of this article, within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price, which tax shall be paid to the Commonwealth by the person who makes such use as herein provided....

Pursuant to Section 7202(b) the Department assessed use taxes on Petitioners' purchase of shares in the syndications of the standard bred stallions. However, Petitioners contend that they merely acquired the right to have a number of mares artificially inseminated with the stallions' sperm and did not acquire any actual ownership, custody, control, or possession of the stallions. Thus, Petitioners contend that the breeding rights they purchased were not tangible property, but only incorporeal rights and therefore not subject to the use tax. Conversely, the Commonwealth contends that the syndication agreements clearly establish Petitioners as owners of undivided fractional interests in the stallions which are tangible property.

In *Commonwealth v. Wetzel,* 435 Pa. 468, 257 A.2d 538 (1969), our Supreme Court noted that the purchase of a stallion's stud services amounts to a transfer of personal property. In *Wetzel,* the Court, relying on *Commonwealth v. Hanover Shoe Farms,* 408 Pa. 234, 182 A.2d 511 (1962), states: "the sale of stud services of a stallion becomes a taxable event under the Act only because it includes the

transfer of tangible personal property." *Wetzel,* 435 Pa. at 471, n. 2, 257 A.2d at 539, n. 2.

However, unlike the situation in *Wetzel* which dealt with stud services, the present case involves the sale of syndicated fractional interests in breeding stallions. Although our search has revealed a dearth of precedent in this state regarding the sales and use taxation of breeding syndications, the statutory provisions of our nation's breeding jurisdictions have been summarized as follows:

B. Stallion Shares, Seasons, and Lifetime Breedings

There is a wide divergence between major breeding states in the treatment of sales of stallion shares and seasons. The sale of syndicated fractional interests ('shares') in breeding stallions probably is exempt from the sales tax in the same states that exempt the sale of all horses or the sale of breeding horses, most notably Florida, Illinois, Kentucky, Maryland, New York, Ohio, Texas, Vermont, and Washington since it is reasonable to consider the sale of a percentage interest in a horse the same as the sale of the entire horse. On the other hand, such sales are generally taxable elsewhere.

In the typical stallion syndication, up to forty shares are sold, usually to different purchasers. Even where not specifically exempted, a seller might claim that the shares are intangible property in the nature of an interest in a partnership, or could claim that application of an 'occasional sale' exemption should apply, since a single horse is involved. However, in most jurisdictions, the taxing authority will consider such sales of stallion shares to be sales of tangible personal property (undivided interests in the stallion) and will find that the sale of multiple shares to different purchasers constitutes a number of separate sales, thus eliminating any 'occasional sale' consideration.

Craigo, *Sales and Use Tax Planning for the Horse Industry,* 78 Ky.L.J. 601, 606–607.

In the present controversy, a review of the syndication agreements indicates that Petitioners have acquired fractional interests in the respective stallions. Clearly, the

horses are tangible property. For purposes of use tax assessment, we see no reason to differentiate between racing syndications and breeding syndications. Although some states exempt breeding syndications from sales and use tax, our state law does not.

Accordingly, we conclude that Petitioners' purchase of shares in their respective syndications is neither specifically exempt from the use tax assessed under the Tax Code, nor exempt as sales of intangible personal property. The order of the Board is affirmed.

## ORDER

AND NOW, this 10th day of January, 1991, the orders of the Board of Finance and Revenue in the above-captioned proceedings are affirmed. Unless exceptions are filed within thirty (30) days in accordance with the provisions of Pa.R.A.P. 1571(i), the Chief Clerk shall enter final judgment.