**[J-31A&B-2018]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| LORA JEAN WILLIAMS; GREGORY J. SMITH; CVP MANAGEMENT, INC. D/B/A OR T/A CITY VIEW PIZZA; JOHN'S ROAST PORK, INC. F/K/A JOHN'S ROAST PORK; METRO BEVERAGE OF PHILADELPHIA, INC. D/B/A OR T/A METRO BEVERAGE; DAY'S BEVERAGES, INC. D/B/A OR T/A DAY'S BEVERAGES; AMERICAN BEVERAGE ASSOCIATION; PENNSYLVANIA BEVERAGE ASSOCIATION; PHILADELPHIA BEVERAGE ASSOCIATION; AND PENNSYLVANIA FOOD MERCHANTS ASSOCIATION, | : : : : : : : : : : : : : : : : : | Nos. 2 & 3 EAP 2018<br><br>Appeal from the Order of the Commonwealth Court entered on 6/14/17 at Nos. 2077 C.D. 2016 and 2078 C.D. 2016 affirming the order entered on 12/19/16 in the Court of Common Pleas, Philadelphia County, Civil Division, at No. 01452 September Term 2016<br><br><br>ARGUED: May 15, 2018 |
|         Appellants | : : : : : : | |
|         v. | : : : | |
| CITY OF PHILADELPHIA AND FRANK BRESLIN, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE PHILADELPHIA DEPARTMENT OF REVENUE, | : : : : : : : : | |
|         Appellees | : : | |

***OPINION***

**CHIEF JUSTICE SAYLOR**                    **DECIDED: July 18, 2018**

In this limited appeal by allowance, we address a claim that the Philadelphia City Council violated an express statutory limitation on taxing power delegated to it by the Pennsylvania General Assembly, when the council created what is colloquially referred to as the City's soda or beverage tax.

In June 2016, City Council enacted the challenged ordinance, which imposes a tax regarding specified categories of drinks sold, or intended to be sold, in the municipal limits. *See* PHILA. CODE, ch. 19-4100. Although the council's formal denomination for this levy was the "Sugar-Sweetened Beverage Tax," a broader array of beverages is impacted, including specified drinks containing sugar substitutes. *See Williams v. City of Phila.*, 164 A.3d 576, 579 (Pa. Cmwlth. 2017) (*en banc*) (delineating these categories with reference to Section 19-4101(3) of the Philadelphia Code). For convenience, the term "beverage tax" is employed below, and the words "beverage" and "beverages" are used to refer to drinks within the purview of the tax.

The tax applies to the supply, acquisition, delivery, or transport of beverages. *See* PHILA. CODE §19-4103(1). It is generally collected when beverages are transferred from a distributor, wherever located, to a Philadelphia retailer, which the ordinance refers to as a "dealer." *Id.* §19-4101(1). Apart from such transfers, the tax is also collected in connection with the "transport of any [covered] beverage into the City by a dealer." *Id.* §19-4103(1).

The beverage tax is assessed at one and one-half cents per fluid ounce, based on the volume of the drink to be sold at retail, *see id.* §19-4103(2)(a) & (b), and is ordinarily paid by distributors, albeit that dealers must remit payment under some circumstances. *See id.* §§19-4103(1), 19-4105(1), (2) & (4), 19-4107. In all cases, the levy applies only when the transfer or transport "is for the purpose of the dealer's

holding out *for retail sale* within the City the [covered beverages]." *Id.* at §19-4103(1) (emphasis added).

Appellants -- a group of consumers, retailers, distributors, producers, and trade associations -- commenced the present civil action against the City and the Commissioner of the Philadelphia Department of Revenue, in the court of common pleas, challenging the legality and constitutionality of the tax and seeking declaratory and injunctive relief. In relevant part, Appellants advanced a theory of express preemption premised upon the Sterling Act,[1] by which the Pennsylvania Legislature afforded to the Philadelphia City Council broad authority to impose taxes, within its borders, *inter alia*, on "transactions" and "subjects." 53 P.S. §15971(a) (conferring upon the City "the power to [tax] any and all subjects of taxation which the Commonwealth has power to tax but which it does not . . . tax or license"). Appellants emphasized, however, that, per the explicit terms of the enactment, City Council lacks the authority to impose duplicative taxes, *i.e.*, any tax on a transaction or subject "which is now or may hereafter become subject to a State tax . . .." *Id.*

According to the complaint, the beverage tax duplicates the six-percent state sales and use tax levied on the purchase price of tangible personal property, including "soft drinks." 72 P.S. §§7201(a) & (m), 7202. Prominent within the complaint was Appellants' contention that a subject matter of the local and state taxes -- *i.e.*, beverages -- is the same. *Accord* Brief for Appellants at 8 ("Virtually every beverage covered by the [beverage tax] is already subject to the Commonwealth's sales tax, and vice versa.").

---

[1] Act of August 5, 1932, Ex. Sess., P.L. 45 (as amended 53 P.S. §§15971–15973).

From the outset, Appellants recognized that the beverage tax is assessed at a different tier of commercial activity than the state sales and use tax, since the beverage tax generally is paid at the distributor/dealer level. *See, e.g.*, Complaint ¶4 ("[T]he City has attempted to skirt the preemptive effect of the [state sales and use tax] by imposing the [beverage tax] on 'the distribution' of soft drinks that will be held out for retail sale in the City -- one step up the chain from the actual retail sale of these beverages to consumers."). It was the Appellants' position, however, that this distinction lacked legal significance, since, they asserted, the practical effect is that the tax is imposed on consumers, just as in the case of the state sales and use tax.

In this regard, Appellants also stressed that the beverage tax has a strong retail-sale nexus, *see* PHILA. CODE §19-4103(1). *See, e.g.*, Complaint ¶58 ("On its face, the plain language of the Tax demonstrates that it is intended to burden the retail consumer."). Along these lines, Appellants invoked a series of judicial decisions recognizing that the character of a tax is determined according to its incidence. *See, e.g.*, *id.* at ¶133 (citing, among other cases, *Dawson v. Ky. Distilleries & Warehouse Co.*, 255 U.S. 288, 292, 41 S. Ct. 272, 274 (1921)).

The common pleas court sustained preliminary objections advanced by the City. *See Williams v. City of Phila.*, No. 1452 Sept. Term 2016, *slip op.* (C.P. Phila. Dec. 19, 2016) (Glazer, J.). Analyzing the Sterling Act, the court reasoned that the enactment does not preclude a local tax on a different "aspect of [a business's] operations" than is taxed by the state. *Id.* at 5. In this respect, the court cited, *inter alia*, *National Biscuit Co. v. City of Philadelphia*, 374 Pa. 604, 98 A.2d 182 (1953), which held that payment of the state corporate income tax and other taxes does not bar the City, under the Sterling Act, from exacting a mercantile tax measured by the gross volume of business. *See id.* at 613-14, 98 A.2d at 186-87. According to the court of common pleas, such decisions

establish that the Sterling Act only forbids a political subdivision from taxing the "same aspect of a business that is also taxed by the Commonwealth." *Williams*, No. 1452 Sept. Term 2016, *slip op.* at 5.

From a broader tax-law perspective, the county court explained that, in determining whether one tax duplicates another, the "incidence" of the two taxes is controlling, with "incidence" referring to "the subject matter [of the tax] and, more important, the measure of the tax, *i.e.*, the base or yardstick by which the tax is applied." *Commonwealth v. Nat'l Biscuit Co.*, 390 Pa. 642, 652, 136 A.2d 821, 825-26 (1957). In this regard, the court deemed it determinative that the beverage tax is a levy on distribution of beverages on a per ounce basis, *see* PA. CODE §19-4103(2), and that legal liability to pay the tax remains on *distributors* and, in certain instances, *dealers*, *see id.* §§19-4105(1), (2) & (4), 19-4107. On the other hand, the common pleas court highlighted, the state sales and use tax is levied upon "sale[s] at retail," and the legal liability to pay the tax falls upon *the consumer*. 72 P.S. §7202(a). Furthermore, the court noted, the beverage tax is triggered irrespective of whether dealers actually sell the drinks to consumers. *See* PHILA. CODE §19-4103(1).

The common pleas court also rejected Appellants' argument that the incidence of the beverage tax should be determined according to post-tax economic consequences experienced in the marketplace. *See Williams*, No. 1452 Sept. Term 2016, *slip op.* at 7 (summarizing Appellants' argument that "the incidence of the tax[es] [are] the same because the [beverage tax] will cause the distributor to pass the economic burden of the tax [on to] the dealer who will then pass the economic burden to the consumer"). In fact, the court deemed such considerations to be irrelevant. *See id.* ("What is determinative is how the [beverage tax] operates, not what private actors will do in response to the tax to offset the burden of the tax or other post-tax economic

transactions." (citing *Nat'l Biscuit Co.*, 390 Pa. at 652, 136 A.2d at 826)). In this regard, the court drew support from *Gurley v. Rhoden*, 421 U.S. 200, 207-08, 95 S. Ct. 1605, 1610 (1975) (holding that federal and state excise taxes on fuel are appropriately included in the measure of a fuel provider's taxable gross receipts for purposes of a Mississippi sales tax -- albeit that the economic burden of the tax is conventionally passed on to consumers -- based on the conclusion that the *legal incidence* of tax fell upon the provider), and *Blauner's Inc. v. City of Phila.*, 330 Pa. 342, 344-46, 198 A. 889, 891-92 (1938) (determining that a local sales tax did not duplicate the state corporate net income tax or other taxes imposed by the Commonwealth, regardless of whether corporations or consumers bore the tax burden).

Ultimately, the common pleas court differentiated the beverage tax as a "non-retail, distribution level tax." *Williams*, No. 1452 Sept. Term 2016, *slip op.* at 6. Given its conclusion that the tax does not apply to the same transaction or subject as the state sales and use tax, the court discerned no violation of the Sterling Act.

A divided, *en banc* panel of the Commonwealth Court affirmed. *See Williams*, 164 A.3d 576. Like the county court, the majority reasoned that, in determining whether a tax is duplicative, the focus is upon the incidence of the tax; such incidence is ultimately determined according to the substantive text of the enabling legislation; and the concept of legal incidence does not concern post-tax economic actions of private actors. *See id.* at 586. In this regard, the majority also referenced the Supreme Court of the United States' decision in *Gurley* and this Court's opinion in *Blauner's, Inc. See id.* at 586, 589. Because the City's beverage tax and the state sales and use tax are imposed on different, albeit related, transactions and measured on distinct terms, the majority likewise concluded that the Sterling Act was not offended. *See id.* at 588-89 &

n.20 ("[T]he [beverage tax] taxes non-retail distribution transactions and not retail sales to a consumer.").

Judge Covey dissented, joined by Judge Cohn Jubelirer, opining that the beverage tax is indeed duplicative of the state sales and use tax, because the former is only triggered when "there is a retail sale involved." *Id.* at 597 (Covey, J., dissenting) (emphasis omitted) (relying, *inter alia*, upon Section 19-4103(1) of the Philadelphia Code). In this regard, the dissent criticized the majority for failing to account for the full text of the governing ordinance, the "entire underpinning" of which, the dissent reasoned, was "the retail sale mandate." *Id.* at 598. In light of this perspective, the dissent concluded that the tax's incidence is the retail transaction, not distribution. *See id.* at 598-99. To the degree that there was any ambiguity, the dissent invoked the principle that statutes imposing tax liability are to be strictly construed against the government.[2] *See id.* at 600 (citing *Tech One Assocs. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cty.*, 617 Pa. 439, 458, 53 A.3d 685, 696 (2012)).[3]

Appeal was allowed on a limited basis to address whether the beverage tax violates the Sterling Act. As the issue is one of law, our review is plenary.[4]

---

[2] Conversely, tax exemptions are generally construed in favor of the taxing authority. *See* 1 Pa.C.S. §1928(b)(5).

[3] The Commonwealth Court majority and the dissent also debated the significance of the opinion announcing the judgment of the Court in *United Tavern Owners of Philadelphia v. School District of Philadelphia*, 441 Pa. 274, 272 A.2d 868 (1971). We have elected to reserve the discussion of that case for our analysis, below.

[4] Appellees' preliminary objections were in the nature of a demurrer, which presents the question of "whether, on the facts averred, 'the law says with certainty that no recovery is possible.' If doubt exists concerning whether the demurrer should be sustained then 'this doubt should be resolved in favor of overruling it.'" *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 91, 106 A.3d 48, 56 (2014) (citations omitted). Both parties advocate that their respective interpretations of the Sterling Act can be fully vindicated at this juncture, and (continued…)

The present arguments to this Court delve deeply into federal and state case law pertaining to a variety of taxing subjects and are at times highly complex. In the broadest frame, Appellants maintain that the beverage tax represents a transparent effort, by the Philadelphia City Council, to do indirectly what it could not do directly. *See, e.g.*, Brief for Appellants at 2, 13 (contending that the City cannot "sidestep the Sterling Act by dressing up a tax on selling retail products as a tax on 'distribution transactions'"). The tax is thus preempted, Appellants posit, because the City is taxing "the same thing" as the Commonwealth, in violation of the Sterling Act's prohibition on double taxation. *Id.* at 15; *see also id.* at 20 ("The Tax was intended to and in fact does operate on selling soft drinks in Philadelphia.").

Appellants continue to stress that both the local beverage tax and the state sales and use tax apply to the same beverages, and thus, in their view, the same subject, as well as the retail nexus associated with the beverage tax. *See, e.g.*, *id.* at 1 ("Although the [beverage tax] is generally collected from those who *distribute* the drinks to retailers, it is imposed *only* where the drinks are sold or intended to be sold at *retail* in Philadelphia." (emphasis in original) (citing PHILA. CODE §19-4103(1)). They contend that this frame of reference favors a test for assessing tax duplication for Sterling Act purposes grounded on economic impact. *See, e.g.*, *id.* at 15 ("Although cast as a tax on distribution, the City's Tax is inextricably tied to retail sales and is ultimately borne by the same Philadelphia consumers who already pay the Commonwealth's sales tax."). In this respect, Appellants reference *Murray v. City of Philadelphia*, 364 Pa. 157, 71 A.2d 280 (1950), for the proposition that, "[i]n determining whether double taxation results, . . . the *practical operation* of the two taxes is controlling." *Id.* at 165, 71 A.2d at

(…continued)
ultimately, we conclude that there are no factual differences that preclude a final determination on our part.

284 (emphasis added). Consistent with the dissent in the Commonwealth Court, Appellants also emphasize that tax enabling statutes are to be strictly construed.[5]

Appellees, on the other hand, maintain that the beverage tax ordinance taxes non-retail, distribution-level transactions and therefore, does not duplicate the state sales and use tax. It is their position that tax duplication, for purposes of the Sterling Act, should be assessed according to a standard per which only a local tax having the same legal incidence as a state tax should be deemed preempted. *See, e.g.*, Brief for Appellees at 15 ("Contrary to the core of [Appellants'] position, duplication is shown through actual sameness -- not mere relatedness."). Appellees highlight that the beverage tax touches upon only a subset of commodities subject to the state sales and use tax; employs a different measure (volume as opposed to price); operates on the sale at distribution, whether or not a retail sale occurs, as long as one was intended; and is paid by distributors or dealers as opposed to consumers. According to Appellees, the beverage tax "is a lawful exercise of the power the General Assembly granted to the City of Philadelphia to wrestle with its own tax base and local politics in order to solve its own problems and meet its own needs." Brief for Appellees at 1.[6]

---

[5] Numerous *amici* have filed briefs in support of Appellants' position, including a group of 34 Pennsylvania legislators; the Teamsters Local Union No. 830 and the Pennsylvania Conference of Teamsters; and the National Federation of Independent Business Small Business Legal Center, Pennsylvania Chamber of Business and Industry, Pennsylvania Restaurant and Lodging Association, Pennsylvania Retailers Association, National Association of Theatre Owners, and Tri-State Automatic Merchandising Council.

[6] *Amici* favoring Appellees' position include: The Sustainable Business Network of Greater Philadelphia; the International Municipal Lawyers Association; Public Citizens for Children & Youth, CEIBA, Inc., the Delaware Valley Association for the Education of Young Children, and Public Health Management Corporation; the Philadelphia Parks Alliance; African-American Chamber of Commerce for Pennsylvania, New Jersey & Delaware; Philadelphia Opportunities Industrialization Center, Inc.; City of Berkeley, (continued…)

## I. Preemption Under the Sterling Act

In considering the General Assembly's intentions in devising the Sterling Act, we apply conventional principles of statutory construction, which are discussed in myriad decisions of this Court. *See, e.g.*, *Norfolk S. Ry. Co. v. PUC*, 621 Pa. 312, 328, 77 A.3d 619, 629 (2013). The analysis encompasses close adherence to terms of a statute that are plain and clear and resort to other approaches of discernment only in the presence of ambiguity or inexplicitness. *See id.* Where ambiguity or inexplicitness exists, the Court may afford weight to other considerations, including the object to be attained by the statute under consideration and the consequences of a particular interpretation. *See id. See generally* 1 Pa.C.S. §§1921-1939.

As the litigants recognize, the Sterling Act is an embodiment of Depression-era legislation intended to enhance the City of Philadelphia's ability to address essential local needs and issues. *See City & Cty. of Phila. v. Samuels*, 338 Pa. 321, 324, 12 A.2d 79, 81 (1940) ("The [Sterling Act] was an expression of the legislative intention to

---

(…continued)
California; the American Heart Association, American Cancer Society Cancer Action Network, American Medical Association, Food Trust, Healthy Food America, Momsrising.org, National Alliance for Hispanic Health, National Association of Chronic Disease Directors, National Association of County and City Health Officials, National Association of Local Boards of Health, Notah Begay III Foundation, Pennsylvania Association of Staff Nurses and Allied Professionals, Pennsylvania Medical Society, Philadelphia County Medical Society, Physicians for Social Responsibility Philadelphia, and Public Health Law Center; and Changelab Solutions, Children's Defense Fund, Highscope Educational Research Foundation, Pennsylvania Association for the Education of Young Children, and Pennsylvania Child Care Association.

Various of these *amici* focus on broader social policy issues regarding asserted benefits of the beverage tax in combatting adverse health effects and funding local programs for the benefit of the public at large and, particularly, vulnerable populations. Our analysis here, however, is centered upon the issue of statutory interpretation on which the appeal was allowed.

increase the taxing power of the city," in light of "revenue difficulties" and "frequent appeals on behalf of the city . . . made to the legislature").[7]  Although the statute was enacted during a time of a global economic crisis, it has remained substantively the same, as it pertains to Philadelphia, throughout the many decades that followed.[8]

This Court has described the Sterling Act as tax enabling legislation vesting in the City "an enormously broad and sweeping power of taxation."  *Nat'l Biscuit Co.*, 374 Pa. at 610, 98 A.2d at 185.  Although, at the same time, it was recognized that the City cannot duplicate the Commonwealth's imposition of a tax, *see id.*, we agree with a Justice's cautionary admonition that such limitation "must be seen in the light of the legislative intent of providing sources of revenue for impoverished cities."  *Tax Rev. Bd. v. Smith, Kline & French Labs.*, 437 Pa. 197, 201, 262 A.2d 135, 137 (1970) (opinion announcing the judgment of the Court).

The relevant provisions of the Sterling Act are as follows:

> [T]he council of any city of the first class shall have the authority . . . to levy, assess and collect . . . such taxes on persons, transactions, occupations, privileges, subjects and personal property . . . as it shall determine, *except that* such council shall not have authority to levy, assess and collect . .

---

[7] *See generally* Brief for *Amicus* Int'l Mun. Lawyers Ass'n at 4 ("Historically, Pennsylvania and its political subdivisions relied almost exclusively on real estate taxes, but the depression aggravated other developing problems from the Industrial Revolution and brought the need for increased revenue.  To alleviate the persistent financial strain, 'the 1930's witnessed the beginning of attempts to broaden local taxing powers.'" (quoting ADVISORY COMM'N ON INTERGOVERNMENTAL RELATIONS, A-14, STATE CONSTITUTIONAL AND STATUTORY RESTRICTIONS ON LOCAL TAXING POWERS 74 (1962))).

[8] The statute originally applied to both first- and second-class cities, but the authority extended to the latter expired, and the enactment was amended in 1961 solely to exclude references to second-class cities.  *See* Act of July 26, 1961, P.L. 904, §1.  This is the only modification made during the statute's eighty-six-year history.

. any tax on a privilege, transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee. If, subsequent to the passage of any ordinance under the authority of this act, the General Assembly shall impose a tax or license fee on any privilege, transaction, subject or occupation, or on personal property, taxed by any city of the first class hereunder, the act of the Assembly imposing the State tax thereon shall automatically vacate the city ordinance passed under the authority of this act as to all taxes accruing subsequent to the effective date of the act imposing the State tax or license fee. *It is the intention of this section to confer upon cities of the first class the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax* or license, subject only to the foregoing provisions that any tax upon a subject which the Commonwealth may hereafter tax or license shall automatically terminate upon the effective date of the State act imposing the new tax or license fee.

53 P.S. §15971(a) (emphasis added).[9]

Consistent with the General Assembly's explicit statement of its intentions, expressed within the four corners of the Sterling Act, we agree with Appellees that the question in this case ultimately reduces to whether the Commonwealth has the power to tax -- but does not tax -- the supply, acquisition, delivery, or transport of beverages at the dealer/distributor level. *See, e.g.*, Brief for Appellees at 12. If so, the beverage tax imposed upon such transactions and/or subjects facially resides within the broad,

---

[9] Regarding the statute's delineation of "persons, transactions, occupations, privileges, subjects, and personal property" subject to taxation, the litigants agree that the Legislature utilized terms that are broad, overlapping, and imprecise to capture a wide range of subject matter. *See, e.g.*, Brief for Appellants at 16 (quoting *V.L. Rendina, Inc. v. City of Harrisburg*, 595 Pa. 407, 418-19, 938 A.2d 988, 995 (2007)).

To facilitate the present focus, we note that we have omitted the geographic nexus of the Sterling Act from the above quote. That aspect is discussed independently below. *See, e.g.*, *infra* note 18.

general grant of autonomous taxing power available to the City per the Sterling Act. Significantly, however, Appellants offer no argument that the Commonwealth lacks this power.

Instead, Appellants' sole reference to the Legislature's explication of its own intentions proceeds as follows: "[T]hat sentence does not vary the main grant of taxing authority earlier in the subsection -- on the contrary, it is expressly 'subject . . . to the foregoing provisions,' . . . -- and it is not the sentence on which this Court has focused in Sterling Act cases." Reply Brief for Appellants at 5 n.1 (quoting 53 P.S. §15971(a)). To the degree that this Court has not previously focused on these specific terms of the Sterling Act, however, certainly such inattentiveness cannot mean that the Legislature's directions should be deemed to have been judicially nullified. In point of fact, we find that the statutory language in question operates to clarify the preceding terms of the enactment and, in our view, to alleviate any relevant ambiguity which might otherwise be present.

In terms of Appellants' contention that this material statement of the General Assembly has been made expressly "subject . . . to the foregoing provisions," *id.*, such argument is premised upon the omission of material qualifying language. In this regard, the "subject *only* to" proviso of the Sterling Act serves solely to reinforce the power of the Legislature to supplant otherwise proper local taxes. 53 P.S. §15971(a) ("It is the intention of this section to confer upon cities of the first class the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax or license, *subject only to the foregoing provisions that any tax upon a subject which the Commonwealth may hereafter tax or license shall automatically terminate upon the effective date of the State act imposing the new tax or license fee.*") (emphasis added). Contrary to Appellants' position, the

proviso does not function as an express qualification concerning the broader aspects of the Legislature's statement of its intentions.[10]

In our view, that statement strongly reinforces the legislative design of an expansive delegation of taxing power (subject to the Legislature's express reservation of the power to preempt through future legislation). *Accord, e.g.*, *Nat'l Biscuit Co.*, 374 Pa. at 610, 98 A.2d at 185. Significantly, moreover, particularly in the context of Pennsylvania's complex scheme of multi-jurisdictional taxation, the notion of duplicative taxation is highly amorphous. *Cf.* JOSEPH C. BRIGHT, 27 SUMM. PA. JURIS. 2D TAXATION §14:5 (2018) ("Economic double taxation is . . . impossible to avoid under a system of partially delegated taxing powers[.]"). For example, the phenomenon of tax pyramiding is sometimes referred to as a form of duplicative taxation, *see, e.g.*, BRIGHT, 26 SUMM. PA. JURIS. 2D TAXATION §7:3, and, in other instances, distinguished from duplication. *See, e.g.*, *A.B. Hirschfeld Press, Inc. v. City and Cty. of Denver*, 806 P.2d 917, 924 (Colo. 1991) (*en banc*) ("The mere pyramiding of taxes on an item as it flows through commercial channels does not in itself constitute double taxation." (citations omitted)).[11] We find it to be unlikely that the Legislature would have intended for such a malleable

---

[10] Indeed, in a statute concerning the taxing authority of certain municipalities *other than* the City of Philadelphia, the General Assembly has demonstrated that it knows well how to subordinate a statement of its intentions more generally, where it wishes to do so. *See* 53 P.S. §6924.305 (repealed in part) ("It is the intention of this section to confer upon such political subdivision the power to levy, assess and collect taxes upon any and all subjects of taxation, *except as above restricted and limited* . . .." (emphasis added)). The Legislature's approach of refraining from so qualifying its statement of intentions in the Sterling Act represents yet another manifestation of its design to afford expansive taxing power to the City. *See generally infra* Part IV.

[11] In *Commonwealth v. Wetzel*, 435 Pa. 468, 257 A.2d 538 (1969), this Court referred to a pyramiding effect as double taxation. *See id.* at 471-72, 257 A.2d at 539. The treatment on this point, however, was at a high level of abstraction and, in any event, the case did not concern the interrelationship of taxes by multiple governmental units.

concept, in the broader economic sense at least, to serve as an unexpressed limitation upon its delegation of taxing power to a local government unit.

Relatedly, we credit Appellees' position that tax duplication, for purposes of the Sterling Act, turns on legal -- and not economic -- incidence. Significantly, this Court has rejected an economic incidence test in determining the nature of a tax in analogous contexts. For instance, in *John Wanamaker, Philadelphia v. School District of Philadelphia,* 441 Pa. 567, 274 A.2d 524 (1971), the Court recognized that "economically the incidence of" a local tax imposed on the use of commercial and industrial property fell upon the property itself. *Id.* at 575, 274 A.2d at 527. Nevertheless, the Court found that the *legal incidence* -- and hence, the "true nature" of the tax -- was on the privilege of using the property, rendering the tax "a true excise tax." *Id.* at 575, 577, 274 A.2d at 527, 529.[12] Notably as well, in the tax immunity setting, federal courts have been resolutely instructed to avoid the "venturesome" and "daunting" inquiry into economic incidence. *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 459-60, 115 S. Ct. 2214, 2221 (1995). According to the Supreme Court of the United States: "If we were to make 'economic reality' our guide, we might be obliged to consider, for example, how completely retailers can pass along tax increases without sacrificing sales volume -- a complicated matter dependent on the characteristics of the market for the relevant product." *Id.*

We discern no evidence from the text of the Sterling Act suggesting that Pennsylvania courts are to embark upon such an inquiry into economic incidence for

---

[12] This determination was central to the Court's holding that the tax did not violate the Uniformity Clause of the Pennsylvania Constitution, in light of the fact that it imposed a differential tax on commercial and industrial realty as compared with residential property. *See generally Valley Forge Towers Apts. N, LP v. Upper Merion Area Sch. Dist.*, ___ Pa. ___, ___ n.4, 163 A.3d 962, 967 n.4 (2017).

purposes of evaluating the permissibility of local taxes. Indeed, had the Legislature wished for the courts to eschew the "reasonably bright-line standard" of a legal-incidence litmus, *id.* at 460, 115 S. Ct. at 2221 (citation omitted), it would have been a simple matter for the Assembly to have so provided. *See generally* HELLERSTEIN, STATE TAXATION ¶17.06 (2018) ("State court decisions and administrative regulations generally follow the same line of analysis articulated [in *Gurley*] -- that is, the legal incidence of the tax falls on the entity who has the legal obligation to pay it, even if the entity has passed on the economic burden of the tax to others.").[13]

---

[13] We realize that this Court refers to the "practical operation of the two taxes [claimed to be duplicative] as against mere difference in terminology from time to time employed in describing taxes in various cases." *Murray*, 364 Pa. at 165, 71 A.2d at 284. Appellants have pointed to no decision of this Court, however, that interprets this reference to a statute's or ordinance's implementation mechanics to subsume an economic incidence analysis encompassing consideration of post-tax economic reactions such as a downstream displacement, by private actors, of the burden of a tax. *Accord Williams*, 164 A.3d at 586 ("[A] tax's 'operation or incidence' refers to the substantive text of the ordinance and does not concern the post-tax economic actions of private actors[.]" (quoting, indirectly, *Nat'l Biscuit Co.*, 390 Pa. at 652, 136 A.2d at 825)).

Our present decision relative to the applicability of a legal incidence standard is tethered to the Sterling Act. We recognize that, in some other settings, consideration of economic incidence may be necessary. *See, e.g.*, *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 580, 117 S. Ct. 1590, 1600 (1997) (discussing the relevance of economic incidence in federal Commerce Clause cases regarding discrimination by state taxing authorities).

## II. Application of the Sterling Act's Preemption Provisions

Appellants and a number of their *amici* suggest, with varying degrees of directness, that this Court should deem "beverages" to be the overarching subject of both the state sales and use tax and the City's beverage tax for Sterling Act purposes. As we understand this position, the premise is that each one of the discrete range of "persons, transactions, occupations, privileges, subjects and personal property" within the scope of the Sterling Act should be bundled into an overarching subject-matter category, which the City is prohibited from reaching. *See* 53 P.S. §15971(a).

In many decisions, however, this Court has looked to a far more "precise inciden[ce]" to determine the nature of a tax. *John Wanamaker,* 441 Pa. at 574, 274 A.2d at 527. Without this closer focus, for example, the Court could never have approved the use tax pertaining to commercial and industrial property at issue in the *John Wanamaker* case over and against a Uniformity Clause challenge. *See supra* note 12 and accompanying text. In a case arising under the Sterling Act, this Court sanctioned a City tax pertaining to the transfer of realty, despite the Commonwealth's imposition of a contemporaneous tax, on the theory that the former was a tax on "transactions" and the latter on "documents." *See L.J.W. Realty Corp. v. City of Phila.*, 390 Pa. 197, 202-03, 134 A.2d 878, 881-82 (1957). Abandonment of a legal-incidence test in favor of a subject-matter focus on "realty" -- or even upon the particular transaction in issue -- would obviously undermine the decision in its entirety.

If the Court were to adopt a broad subject-matter litmus, Sterling Act cases distinguishing state and city taxes on related subjects as entailing "property" versus "excise" would also be rendered incoherent. *See, e.g.*, *Samuels*, 338 Pa. at 326, 12 A.2d at 82 (distinguishing a City tax measured by gross receipts generated from parking lots from the state corporate net income tax, although both could be said to apply to

"parking" or "parking lots"). And certainly the concept of distinguishing business privilege and mercantile tax from other forms of taxation measured by profits depends upon a legal-incidence assessment independent of a broader, overlapping subject-matter frame of reference. *See, e.g.*, *Nat'l Biscuit Co.*, 374 Pa. at 614, 98 A.2d at 187 (holding that payment of the state corporate income tax and other taxes does not bar the City, under the Sterling Act, from exacting a mercantile tax measured by the gross volume of business); *Fed. Drug Co. v. City of Pittsburgh*, 358 Pa. 454, 457-58, 57 A.2d 849, 850-51 (1948) (differentiating a municipal mercantile license tax from the state foreign corporate franchise and corporate net income taxes, although all applied to "businesses"); *Blauner's, Inc.*, 330 Pa. at 346, 198 A. at 892 (determining that a City sales tax did not duplicate a state mercantile license tax, since the City taxed sales whereas the Commonwealth taxed the privilege of conducting business, notwithstanding that both taxes were measured by gross receipts).[14]

Notably, the Court has observed that matters that are distinct, for instance at a transactional level, can often be described as having a single subject "if the point of view be carried back far enough." *Commonwealth v. Neiman*, 624 Pa. 53, 69, 84 A.3d 603, 612 (2013) (quoting *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 296, 877 A.2d 383, 395 (2005)). Overlaying such a

---

[14] We are under no illusion concerning the intuitiveness and cohesiveness of the decisions in the Sterling Act line on various points. *See* Reply Brief for Appellants at 7 ("[F]or every case that the City cites, one can readily find a different case that finds impermissible duplication despite certain differences between the state and local taxes."); *City of Phila. v. Tax Rev. Bd.*, 144 Pa. Cmwlth. 374, 379, 601 A.2d 875, 877 (1992) ("[I]t is difficult to extract a comprehensive analysis to be used whenever preemption of local taxation is claimed."); BRIGHT, 27 SUMM. PA. JURIS. 2D TAXATION §14:5 (depicting "a body of case law which regrettably is not a reliable basis from which to predict whether any particular tax will be preempted"). It is our aspiration that the legal incidence analysis offered herein will provide at least a modicum of clarification.

frame of reference upon the Sterling Act would obviously subvert the General Assembly's conferral of broad taxing authority to the City.

Consistent with the above decisions, we read the Sterling Act as permitting the City to tax a wide range of "persons, transactions, occupations, privileges, subjects and personal property," 53 P.S. §15971(a), and the preemption provisions as constraining such authority only where the Commonwealth has already imposed a tax having the same legal incidence relative to the same discrete "persons, transactions, occupations, privileges, subjects and personal property." *Id.* In this regard, the Legislature's use of the term "subjects" within the litany does not displace the legal-incidence test, but rather, serves, in the first instance, to establish the statute's broad scope, and in later instances as a reference back to the appropriate (or, relative to preemption, otherwise appropriate) "*subjects of taxation*," *id* (emphasis added).[15] *Cf. V.L. Rendina, Inc.*, 595 Pa. at 418-19, 938 A.2d at 995.

---

[15] Notably, throughout the titles, headings, and text of the Laws of Pennsylvania, the Legislature has frequently employed the term "subjects of taxation" as a term of art to capture a range of things upon which the legal incidence of taxation is or may be placed. *See, e.g.*, 72 P.S. §7101, Historical and Statutory Notes (reflecting that, in the title of the Tax Reform Code of 1971, the General Assembly depicted the enactment as codifying and enumerating certain "subjects of taxation" and imposing taxes thereon). Indeed, the term appears in the Pennsylvania Constitution in the same sense. *See* PA. CONST., art. VIII, §2(b)(2) (authorizing the Legislature to establish a special class or classes of "subjects of taxation" for exemption purposes).

Accordingly, and as explained in the text above, in the context of the Sterling Act it is plain that "subjects of taxation" means the "persons, transactions, occupations, privileges, subjects and personal property" that the statute otherwise and expressly permits the City to tax. And, again, it is dispositive here that the Legislature has specified that it is its intention to permit the City to tax "all subjects of taxation" that the Commonwealth has the power to but does not tax, "subject *only to* the foregoing provisions" pertaining to future displacement of local tax by a new state levy. 53 P.S. §15971(a) (emphasis added).

Turning to a discrete analysis of the legal incidences of the Commonwealth sales and use tax as compared to the City's beverage tax, we agree with the assessments of the common pleas and intermediate courts. Briefly, the state tax is upon "sale[s] at retail," 72 P.S. §7202(a); is measured by purchase price, *see id.* §7203; and falls directly upon consumers, albeit that retailers serve to collect the tax for the benefit of the Commonwealth, *see id.* §7202(a).[16]

The beverage tax, on the other hand, applies to distributor/dealer-level transactions (and/or subjects) made with the purpose of the dealer "holding [the beverage] out for retail sale" in Philadelphia, but independent of whether any retail sale actually occurs. PHILA. CODE §19-4103(1). The measure is the volume of fluid ounces of beverages distributed between the distributor and dealer. *Id.* §19-4103(2)(a). The payer of the beverage tax is the distributor, or in certain circumstances, dealers, *see id.* §§19-4107(2), 19-4105(2), but never the purchasing consumer.[17]

---

[16] The statute makes clear that "sale at retail" does not include "any such transfer of tangible personal property or rendition of service for the purpose of resale." *Id.* §7201(k)(8); *see id.* §7202(a). The fact that the Commonwealth has voluntarily implemented an internal, anti-pyramiding mechanism relative to its own collection of retail sales tax does not, in our view, serve as a restriction on the City's authority to impose taxes at the distributor/dealer level, under the Sterling Act, that may perhaps be passed along to the consumer and, accordingly, be subject to the state sales and use tax. Again, Appellants offer nothing to suggest that the Commonwealth *could not* impose a tax at the distributor/dealer level. *See* 53 P.S. §15971(a) ("It is the intention of this section to confer upon cities of the first class the power to levy, assess and collect taxes upon any and all subjects of taxation which the Commonwealth has power to tax but which it does not now tax . . . ..").

[17] Throughout his dissenting opinion, Justice Wecht attributes particular motivations to City Council in its enactment of the beverage tax. *See, e.g.*, Dissenting Opinion, *slip op.* at 6-9, 15-17. For our part, we remain with the sentiment of the Court, expressed long ago, that, in determining whether the City has authority to levy a tax in the manner and form in which it was imposed, "[*w*]e *have nothing to do with . . . . the purpose of its levy.*" *Blauner's, Inc.*, 330 Pa. at 344, 198 A. at 891 (emphasis added); *accord Gurley*, 421 (continued…)

Based on the above, we agree with Appellees the taxes have different subjects, measures, and payers, and accordingly, distinct legal incidences. *Accord Williams*, 164 A.3d at 586-88; *Williams*, No. 1452 Sept. Term 2016, *slip op.* at 6-7.

We are cognizant of the retail sales nexus integrated into the beverage tax, presumably to establish the essential geographic connection for jurisdictional purposes. *See* 53 P.S. §15971(a) (granting Philadelphia the authority to levy taxes on authorized subjects "within the limits of such city of the first class").[18] We conclude, however, that

---

(…continued)
U.S. at 206-07, 95 S. Ct. at 1610 (explaining that statements by executive officials pertaining to downstream displacements of economic incidence were not relevant to determining the legal incidence of the relevant tax). In this regard, we also credit Appellees' argument, as follows:

> [A]ssumptions regarding a unified, clear legislative intent to cause a particular post-tax economic reaction are misplaced. The [beverage tax] is a general revenue raising measure, and individual Councilmembers were free to vote for the [tax] because of -- or even in spite of -- countless policy considerations, such as raising general monies, enabling thousands of pre-K seats, improving community and recreational facilities, and/or the effect of market forces on consumer behavior and health.

Brief for Appellee at 30.

[18] At several locations within their briefs, Appellants observe that the beverage tax's applicability does not depend upon whether any distribution transactions take place in Philadelphia, *see, e.g.*, Brief for Appellants at 17, thus suggesting that the tax may impermissibly reach extraterritorial activity. *See* 53 P.S. §15971(a) (authorizing local taxation of appropriate subjects of taxation "within the limits of" the City). Appellants explain, however, that they have not raised this point to challenge particular applications of the tax, *see* Reply Brief for Appellants at 8, but to emphasize that "the connection that the Tax draws between soft drink commerce and the City's geographic boundaries is at the retail level, not the distribution level." Brief for Appellants at 18. We have otherwise responded to this argument. Regarding the extraterritorial issue as such, as Appellees explain, such a challenge would represent an as-applied one to particular applications (continued…)

this connection does not convert what is otherwise a distributor/dealer level tax into a retail sales tax.[19]

### III. *United Tavern Owners*

As previously noted, a strong focus has been placed, in this litigation, on the opinion announcing the judgment of the Court in *United Tavern Owners of Philadelphia*, 441 Pa. 274, 272 A.2d 868. *See supra* note 3.

In that case, the City enacted an ordinance authorizing a ten-percent local tax on the retail sale of liquor in Philadelphia's hotels, restaurants, taverns, and clubs. The Commonwealth already had imposed its general six-percent sales tax on liquor, as well as an eighteen-percent tax on liquor sold by the state liquor control board. The state's two taxes, however, unlike Philadelphia's alcohol retail sales tax, were collected when the beverages were transferred from distributor to retailer. This Court nonetheless invalidated the tax under the Sterling Act. The lead opinion, supported by a single Justice, stated: "We hold today that because the sales of liquor are already subject to two state taxes, the state has preempted the specific field of liquor sales for taxation purposes and Philadelphia is barred from enacting the ordinance in question." *Id.* at 284, 272 A.2d at 873.

The parties dispute the applicability of *United Tavern Owners* in terms of both the precedential value of a non-majority opinion and the applicability of the lead opinion's reasoning. We find Appellees to have the better part of the argument on both points. "It

---

(…continued)
of the beverage tax rather than implicating our consideration of the claim of facial invalidity that Appellants pursue at present.

[19] Given our determination that the beverage tax survives scrutiny under a plain meaning application of the Sterling Act, the policy of strict construction of taxing statutes does not pertain to this case.

is axiomatic that a plurality opinion of this court is without precedential authority[.]" *CRY, Inc. v. Mill Serv., Inc.*, 536 Pa. 462, 469 n.3, 640 A.2d 372, 376 n.3 (1994). Furthermore, while there are certainly kernels in the lead opinion suggesting that the author would likely tend toward Appellants' position here, the reasoning is also bound up in discrete concerns pertaining to the Commonwealth's pervasive regulation of liquor. *See United Tavern Owners*, 441 Pa. at 284, 272 A.2d at 873.

## IV. Policy

Finally, we respond as follows to Appellants' assertion that a Sterling Act preemption threshold that permits the City to tax upstream transactions or subjects allows too much room for local manipulation. *See, e.g.*, Brief for Appellants at 14 ("Municipalities around the Commonwealth are watching to see whether the Court will accept the City's novel argument that municipalities can impose new taxes on top of existing sales taxes -- at whatever by-volume rate they please -- so long as they couch those taxes as distribution transaction taxes."). The concern that unintended consequences may unfold are prevalent relative to the promulgation of experimental, remedial legislation such as the Sterling Act. Where the language of the governing statute is clear (or clear enough), however, the solution is legislative -- and not judicial -- adjustment.[20] In this regard, this Court regularly alludes to the superior resources available to the General Assembly in assessing matters of social policy.[21]

---

[20] Notably, the argument has also been made that a broad construction of Sterling Act preemption may yield unfavorable social policy, in that such a reading disregards the economic reality inherent in a delegation to tax at the local level and encourages "second-rate taxes, administrative wastefulness, and litigation." BRIGHT, 27 SUMM. PA. JURIS. 2D TAXATION §14:5.

[21] *See, e.g.*, *Official Comm. of Unsecured Creditors of Allegheny Health Educ. & Research Found. v. PriceWaterhouseCoopers, LLP,* 605 Pa. 269, 301 & n.27, 989 A.2d (continued…)

Indeed, the history of the treatment of the taxing power of Pennsylvania municipalities at large provides a ready example. In 1947, the General Assembly enacted a law conferring on the broader range of municipalities a power to tax so expansive that the enactment soon became known as the "Tax Anything" law. *See* Act of June 25, 1947, P.L. 1145. *See generally* PA. DEP'T OF COMMUNITY AFFAIRS, TAXATION MANUAL §IX at 27 (2002) ("The original enactment[, like the Sterling Act,] excluded from local taxing power subjects of taxation preempted by state taxation, but otherwise had few restrictions."); James A. Moore, *The "Home Rule" Tax Act -- A Solution or a Challenge?*, 97 U. PA. L. REV. 811, 814 (1949) (characterizing the "Tax Anything" enactment, like the Sterling Act, as "a delegation of the state's unused taxing powers to the subdivisions, giving them the responsibility of raising their own revenue in the way they saw fit."). Subsequently, however, with experience, the Legislature imposed a plethora of restrictions, more recently, within the successor statute known as the Local Tax Enabling Act.[22] *See* TAXATION MANUAL §IX at 27 ("The broad general taxing power of the original [embodiment of the LTEA] has been increasingly circumscribed by legislative amendments and court decisions to the point where the Act is now primarily

---

(…continued)
313, 333 & n.27 (2010) (referencing the broader tools available to the legislative branch, such as policy hearings and comprehensive investigations); *Naylor v. Twp. of Hellam*, 565 Pa. 397, 408, 773 A.2d 770, 777 (2001) (recognizing the General Assembly's superior ability to examine social policy issues and determine legal standards so as to balance competing concerns); *Program Admin. Servs., Inc. v. Dauphin Cty. Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations.").

[22] Act of Dec. 31, 1965, P.L. 1257 (as amended 53 P.S. §§ 6924.101–6924.901) (the "LTEA").

an express grant of power to levy certain taxes with maximum rates set by the legislature.").

For whatever reason, however, the General Assembly has left extant the "enormously broad and sweeping power of taxation" granted to the City by the Sterling Act. *Nat'l Biscuit Co.*, 374 Pa. at 610, 98 A.2d at 185. Subject to constitutional limitations, of course, the Legislature remains free to modify this state of affairs, as it has relative to other municipalities.

## V. Summary and Conclusion

In summary, the Sterling Act conferred upon the City of Philadelphia a broad taxing power subject to preemption, while clarifying that "any and all subjects" are available for local taxation which the Commonwealth could, but does not presently, tax. 53 P.S. §15971(a). The Commonwealth could, but does not, tax the distributor/dealer-level transactions or subjects targeted by the beverage tax. Moreover, the legal incidences of the Philadelphia tax and the Commonwealth's sales and use tax are different and, accordingly, Sterling Act preemption does not apply.

The order of the Commonwealth Court is affirmed.

Justices Baer, Todd and Donohue join the opinion.

Justice Wecht files a dissenting opinion.

Justice Mundy files a dissenting opinion.

Justice Dougherty did not participate in the consideration or decision of this case.